# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JULIAN BARGO, LAMAR PRATER and REBECCA PRATT, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP.,<br><br>               Defendants. | Civil Action No.: 2:25-cv-02025-ES-LDW<br><br>Hon. Esther Salas, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>**DEFENDANT APPLE INC. AND APPLE PAYMENTS INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**<br><br>***Document Electronically Filed*** |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    A.    Plaintiffs' Allegations in this Action....................................................3

    B.    The Pending Casino Apps MDL in the Northern District of California.............................................................................................5

    C.    Procedural Background. ......................................................................6

LEGAL STANDARD.........................................................................................7

AUTHORITIES AND ARGUMENT...................................................................9

I.    This Case Could Have Been Brought in the Northern District of California. ...........................................................................................9

II.    Transfer Would Advance the Interests of Justice and Be More Convenient for the Parties and Witnesses. ...................................11

    A.    The Private Interest Factors Favor Transfer........................................11

        1.    Plaintiff's Choice of Forum Should Be Given Minimal Weight. ................................................................................12

        2.    Apple's Forum Preference Supports Transfer. .........................13

        3.    Plaintiffs' Claims Arose in the Northern District of California. ..............................................................................13

        4.    The Northern District of California Is a More Convenient Venue for the Witnesses. .................................................15

        5.    The Location of Documentary Evidence Does Not Favor Venue in this District. .................................................15

    B.    The Public Interest Factors Favor Transfer........................................16

        1.    Any Judgment Could Be Enforced in the Northern District of California. .................................................................17

        2.    Practical Considerations Support Transfer. ............................17

        3.    The Relative Caseload in the District of New Jersey Weighs in Favor of Transfer....................................................20

i

4.    California, Where This Case Arises, Has a Strong Local Interest..........................................................................21

5.    The New Jersey Public Policy Against Burdening Local Jurors with Deciding Out-of-State Disputes Supports Transfer. ...................................................................................22

6.    The Northern District of California, San Jose Division, is Well-Equipped to Apply Relevant Law...................................23

CONCLUSION .........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bockman v. First American Marketing Corp.*
459 F. App'x 157 (3d Cir. 2012)............................................................1, 9, 12, 17

*Calkins v. Dollarland, Inc.*,
117 F. Supp. 2d 421 (D.N.J. 2000)....................................................................11

*Canon Financial Services, Inc. v. JL Barrett Corp.*,
2010 WL 4746242 (D.N.J. Nov. 16, 2010) .......................................................18

*Cottman Transmission Sys., Inc. v. Martino*,
36 F.3d 291 (3d. Cir. 1994) .................................................................................9

*Culp v. NFL Productions LLC*,
2014 WL 4828189 (D.N.J. Sept. 29, 2014)............................................13, 19, 22

*Dawson v. General Motors LLC*,
2020 WL 953713 (D.N.J. Feb. 24, 2020) ..........................................................8, 9

*Deibler v. Basic Research, LLC*,
2023 WL 6058866 (D.N.J. Sept. 18, 2023) ........................................................14

*DG Vault, LLC v. Dunne*,
2020 WL 57876 (D.N.J. Jan. 6, 2020)...........................................................16, 17

*DiMarco v. Coates*,
2020 WL 5593767 (D.N.J. Sept. 18, 2020) ........................................................23

*Dollinger v. Salomon Smith Barney Inc.*,
2001 WL 1917976 (D.N.J. Mar. 7, 2001) ..........................................................18

*In re Exxon Mobil Corp. Deriv. Litig.*,
2020 WL 5525537 (D.N.J. Sept. 15, 2020)....................................................20, 22

*Fung v. Liberty University*,
2025 WL 2017223 (D.N.J. July 18, 2025) ..........................................................21

*Garcia v. Chrysler Group LLC*,
2016 WL 5422018 (D.N.J. Sept. 27, 2016) ...............................................8, 11, 13

*Geraci v. Red Robin International, Inc.*,
  2019 WL 2574976 (D.N.J. June 24, 2019)........................................................15

*Govan v. U.S.*,
  2009 WL 10664440 (D.N.J. Dec. 22, 2009)......................................................22

*Greenwald v. Holstein*,
  2015 WL 12843229 (D.N.J. May 29, 2015).......................................................14

*Groeneveld v. Verb Technology Company, Inc.*,
  2024 WL 1253296 (D.N.J. Mar. 25, 2024) .......................................................23

*Gulden v. Exxon Mobil Corp.*,
  2025 WL 1549313 (D.N.J. May 30, 2025).........................................................21

*HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*,
  2009 WL 2589108 (D.N.J. Aug. 21, 2009) .......................................................22

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ..................................................................11, 13

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  2022 WL 1001566 (D.N.J. Mar. 31, 2022) (Salas, J.)...........................13, 15, 17

*LG Elec., Inc. v. First Int'l Computer, Inc.*,
  138 F. Supp. 2d 574 (D.N.J. 2011).............................................................12, 21

*Opperman v. Path, Inc.*,
  2013 WL 7753577 (W.D. Tex. Jan. 15, 2013) ..................................................10

*Peck v. Jayco, Inc.*,
  665 F. Supp. 3d 607 (D.N.J. Mar. 30, 2023) ....................................................20

*Ricoh Co. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) ...............................................................8, 12

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d. Cir. 1970) ....................................................................9

*Tang v. Eastman Kodak Company*,
  2021 WL 2155057 (D.N.J. May 27, 2021)..............................................17, 21, 22

*In re United States*,
  273 F.3d 380 (3d Cir. 2001) ...................................................................8

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ..........................................................................13

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ............................................................................8

*Yama Seafood, Inc. v. International Payment Group, Inc.*,
2009 WL 10728604 (D.N.J. Jan. 8, 2009) .......................................16

*Ziemkiewicz v. R+L Carriers, Inc.*,
2013 WL 505798 (D.N.J. Feb. 8, 2013) .............................................8

**Statutes**

28 U.S.C. § 1391(b)(2) ...........................................................................9

28 U.S.C. § 1404(a) .....................................................................*passim*

28 U.S.C. § 1407 ......................................................................2, 7, 19

**Other Authorities**

Admin. Off. U.S. Courts, United States District Courts – Combined
Civil and Criminal Federal Court Management Statistics (June 30,
2025), https://www.uscourts.gov/sites/default/files/
document/fcms_na_distprofile0630.2025.pdf ...................................20

*Judges*, United States District Court for Northern District of
California, available at https://cand.uscourts.gov/judges/ .................21

*Jurisdiction Map*, https://cand.uscourts.gov/about/jurisdiction-map/ ......1

N.D. Cal. Local Rule 3-2(c) ..........................................................23, 24

N.D. Cal. Local Rule 3-2(e) ..........................................................23, 24

*Our Judges*, United States District Court for the District of New
Jersey, *available at* https://www.njd.uscourts.gov/our-judges .........21

*U.S. District Court - Judicial Caseload Profile: NEW JERSEY, U.S.
District Courts*, available at fcms_na_distprofile0331.2025.pdf .......21

## **INTRODUCTION**

Plaintiffs Julian Bargo, Lamar Prater, and Rebecca Pratt ("Plaintiffs") hinge their complaint on alleged decisions and conduct that occurred *outside* New Jersey—and primarily in Northern California. For the convenience of the parties and witnesses, and in the interests of justice, Defendants Apple Inc. ("Apple") and Apple Payments Inc. move the Court to transfer this case to the Northern District of California because all of the requirements for transfer pursuant to 28 U.S.C. § 1404(a) are met. *First*, this action could have been filed in the Northern District of California originally because a substantial part of the events giving rise to the claims occurred there. *Second*, on balance, the relevant private and public factors overwhelmingly favor transfer.

Plaintiffs allege that Defendants illegally host simulated casino-style apps on their app platforms and provide payment processing services for purchases made on third-party game developers' websites. Although Apple and Apple Payments Inc. deny all allegations of wrongful conduct and reserve the right to seek dismissal of Plaintiffs' claims on the pleadings or on the merits, transfer is appropriate here because nearly all relevant aspects of this action are centered in the Northern District of California. Three out of the four Defendant entities are headquartered in Santa Clara County—which is within the Northern District of California. *Jurisdiction Map*, https://cand.uscourts.gov/about/jurisdiction-map/ (last visited September 29,

2025). The management and decision-making in connection with Apple's and Google LLC's ("Google") app platforms and Google Payment Corp.'s ("Google Payment") payment processing businesses occur in that District. And the likely key witnesses who are knowledgeable about the Apple App Store and Apple Pay are located there. Plaintiffs seek to represent classes of individuals who allegedly downloaded simulated casino-style apps from the Apple App Store and Google Play Store and acquired virtual currency through in-app purchases. Their claims thus arise from alleged activity that occurred within the Northern District of California. While Plaintiffs filed this action in the District of New Jersey, the only connection this action has to New Jersey is that *one* of three named plaintiffs resides here.

The Judicial Panel on Multidistrict Litigation's ("JPML") recent decision denying consolidation with a multidistrict litigation ("MDL") pending against Defendants Apple and Google in the Northern District of California is not to the contrary. Whereas consolidation under 28 U.S.C. § 1407 asks if an action has sufficient factual overlap with an MDL to require centralization, § 1404(a) contemplates transfer of venue "[f]or the convenience of parties and witnesses" and "in the interest of justice."

Accordingly, Apple Inc. and Apple Payments Inc. request that the Court transfer the case to the Northern District of California.

## BACKGROUND

**A.    Plaintiffs' Allegations in this Action.**

Plaintiffs seek to hold Defendants liable for alleged illegal gambling within simulated casino-style apps created and operated by third-party developers, which Plaintiffs refer to as "Sweepstakes Casinos." Plaintiffs allege the Sweepstakes Casino developers operate websites and apps that offer "games of chance that mirror the games typically found in traditional brick-and-mortar casinos . . . ." Compl. ¶ 2. The Sweepstakes Casinos provide users with an initial allotment of free virtual tokens. *Id.* ¶ 23. After players run out, they can buy more tokens to purportedly "wager on the digital games of chance." *Id.* ¶¶ 8, 23. Plaintiffs allege the developers also allocate players "a second class of virtual tokens that qualifies the user for sweepstakes prizes," such as "cash, gift cards, [or] cryptocurrency . . . ." *Id.* ¶ 8, 24.[1] Plaintiffs claim that, "[b]y awarding sweepstakes tokens that have real value, the Sweepstakes Casinos' websites and apps … are … unlawful Internet casinos." *Id.* ¶ 26.

Plaintiffs pursue claims against Apple based on allegations that Apple unlawfully hosts and promotes the Sweepstakes Casino developers' apps in its App

---

[1] Plaintiffs use various terms to describe the virtual tokens users may purchase, including "Gold Coins," "Game Coins," and "utility tokens." For simplicity, Defendants refer to these as "virtual tokens." Defendants refer to the second type of currency as "sweepstakes tokens."

Store, assists developers by providing marketing guidance and user spending data to the developers, and facilitates in-app transactions for the virtual tokens sold within the apps. Compl. ¶¶ 59–70. Although ancillary to this core theory of liability, Plaintiffs also allege that Apple Payments Inc. unlawfully provides "payment processing services" to users, allowing them to purchase virtual tokens from developer websites through Apple Pay. *Id.* ¶¶ 65–66. Based on these allegations, Plaintiffs assert claims under the New Jersey and New York gambling loss recovery statutes (Counts I, IV), under the New Jersey Consumer Fraud Act and New York General Business Law § 349 (Counts II, V), for unjust enrichment (Counts III, VI), and under civil RICO (Counts VII, VIII).

As the Complaint recognizes, Apple's principal place of business is in Cupertino, California. *See* Compl. ¶¶ 15; *see also* Declaration of Stoney Gamble ("Gamble Decl.") ¶ 3 (explaining Apple's headquarters is located in Cupertino, California). Additionally, the App Store for the United States—which is operated by Apple—is managed in Cupertino, meaning that the primary decision-making, development of relevant policies, and app review processes occur in Northern California. *Id.* ¶ 4. Likewise, although Apple Payments Inc.'s principal place of business is Austin, Texas, *see* Compl. ¶ 16, the Apple Pay payment processing business is primarily managed out of Northern California. Declaration of Michael

A. Thornberry ("Thornberry Decl.") ¶ 5.[2] Similarly, with respect to the other Defendants, Plaintiff concedes that both Google and Google Payment have their principal places of business in Mountain View, California. Compl. ¶¶ 17–18. Thus, the business activity underlying Plaintiffs' claims against all of the Defendants occurred primarily in Santa Clara County, California.

## B.    The Pending Casino Apps MDL in the Northern District of California.

Since 2021, the Honorable Edward J. Davila has been presiding over multidistrict litigations involving similar claims against Apple and Google in the Northern District of California (Case Nos. 5:21-md-02985-EJD and 5:21-md-03001-EJD) (the "Casino Apps MDLs"). The MDLs consist of multiple putative class actions against Apple and Google. Similar to Plaintiffs here, the MDL plaintiffs argue that by offering various "social casino apps" for download on their app platforms and "tak[ing] a 30 percent commission off of every in-app purchase,"

---

[2] Plaintiffs appear to name Apple Payments Inc. as a defendant based on allegations that the entity owns and operates Apple Pay. *See* Compl ¶¶ 16, 78 98. However, a different entity, Apple Payments Services LLC, owns and operates Apple Pay. *See* Thornberry Decl. ¶ 4. For the purposes of this motion, Plaintiff's assertion of claims against Apple Payments Inc. (as opposed to Apple Payments Services LLC) does not change the analysis of relevant factors pursuant to 28 U.S.C. § 1404(a) because, like Apple Payments Inc., Apple Payments Services LLC is also a Delaware Corporation with its principal place of business in Austin, Texas. Apple reserves all rights to seek dismissal of Apple Payments Inc. as an entity, including because Apple Payments Inc. does not own, operate, or otherwise have any involvement with the Apple Pay business.

Apple and Google "host[], promot[e], and facilitate[e] [] illegal gambling … ." *In re: Apple Inc. App Store Simulated Casino-Stye Games Litig.*, Case No. 5:21-md-02985-EJD (N.D. Cal.), ECF 144 ¶¶ 76, 104; *In re: Google Play Store Simulated Casino-Style Games Litig.*, Case No. 5:21-md-03001-EJD (N.D. Cal.), ECF 124 ¶¶ 73, 99. The MDL plaintiffs seek to represent classes of individuals who allegedly downloaded simulated casino-style apps from the Apple App Store and Google Play Store and acquired virtual currency through in-app purchases to access digital content within the apps. They assert RICO and unjust enrichment claims as well as claims under various state consumer protection and gambling recovery statutes, including under New Jersey law in the Google MDL and New York law in the Apple MDL. The MDL remains at the pleading stage following an interlocutory appeal to the Ninth Circuit.

### C.    Procedural Background.

Plaintiffs in *Bargo* previously filed two separate actions: *Bargo v. Apple, Inc., et al.*, Case No. 2:24-cv-10805, in the District of New Jersey, and *Prater v. Apple, Inc., et al.*, Case No. 1:24-cv-09237, in the Southern District of New York. These actions included both Apple and Google as defendants, and also joined certain app developers as co-defendants. Plaintiffs then voluntarily dismissed *Prater* and the initial *Bargo* action without prejudice, and then on March 31, 2025, re-filed this

litigation as a single action against Defendants, in the District of New Jersey. Plaintiffs did not name the app developers as defendants in this action.

Apple and Google filed motions with the JPML to transfer this action to the Northern District of California under 28 U.S.C. § 1407 for centralized proceedings with the MDLs. ECF 50, MDL No. 2985; ECF 47, MDL No. 3001. While the JPML motions were pending, the parties stipulated to a stay of this action until thirty days after the JPML resolved Apple and Google's motions to transfer. ECF 32, 33.

On August 6, the JPML denied Apple and Google's motions to transfer under 28 U.S.C. § 1407, concluding that inclusion of *Bargo* in the MDLs "likely would expand the scope of the MDLs to include a broader universe of casino-style apps involving cash or cash-value prizes." ECF 68 at 2, MDL No. 2985; ECF 65 at 2, MDL No. 3001. While the JPML concluded that *Bargo* did not have sufficient factual overlap with the MDL, its decision did not address whether the Northern District of California would otherwise be the more appropriate forum for litigating *Bargo*. In light of the JPML's decision, Apple and Apple Payments Inc. now seek to transfer the action under 28 U.S.C. *§ 1404(a)* because the claims in this action arose in the Northern District of California.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

might have been brought[.]" 28 U.S.C. § 1404(a). "The purpose of section 1404(a) 'is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "The decision to transfer a case under § 1404(a) rests within the sound discretion of the court." *Dawson v. General Motors LLC*, 2020 WL 953713, at *1 (D.N.J. Feb. 24, 2020); *see also Ziemkiewicz v. R+L Carriers, Inc.*, 2013 WL 505798, at *2 (D.N.J. Feb. 8, 2013) (explaining that a district court has "large discretion" to transfer cases under § 1404(a)).

"The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case 'might have been brought,' and (2) that in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses." *Garcia v. Chrysler Group LLC*, 2016 WL 5422018, at *3 (D.N.J. Sept. 27, 2016). "The court balances private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer." *Id.* While the moving party bears the burden of proof, it "is not required to show 'truly compelling circumstances for change of venue, but rather, that all relevant things considered, the case would be better off transferred to another district.'" *Id.* (alterations adopted) (quoting *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001)).

## <u>AUTHORITIES AND ARGUMENT</u>

**I.    This Case Could Have Been Brought in the Northern District of California.**

"As a threshold matter, the reviewing court 'must make a determination that the suit could have been rightly started in the transferee district.'" *Dawson*, 202 WL 953713, at *2 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d. Cir. 1970)). In a civil action, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "[I]n determining whether a substantial part of the event or omissions giving rise to a cause of action occurred in a specific jurisdiction, [t]he test" focuses on "the location of those events or omissions giving rise to the claim." *Bockman v. First American Marketing Corp.* 459 F. App'x 157, 161 (3d Cir. 2012) (cleaned up). To determine if the act which gave rise to the claim is substantial, "it is necessary to look at the nature of the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3d. Cir. 1994).

Here, although Plaintiffs are residents of New Jersey and New York, *see* ECF 1 ¶¶ 12–14, Plaintiffs' claims against Apple focus on Apple's alleged involvement in an "interstate gambling enterprise" by hosting various gaming apps "that evoke casino enterprises and offer[] games of chance" for download within its app platform, the Apple App Store. *See id.* ¶ 2; *see also id.* ¶ 59 (alleging Apple and

9

Google engage in an "interstate gambling scheme" by "promoti[ng] and distributi[ng]" Simulated Sweepstakes Casino Apps through the "App Store" and "Google Play Store").

Accordingly, the "events and omissions giving rise to" Plaintiff's claims involve Apple's app review and hosting decisions relating to the simulated casino-style apps in the App Store. Apple's App Store for the United States is managed at Apple's headquarters, located in Cupertino, California. Gamble Decl. ¶ 4. As such, the primary decision-making regarding the App Store, including the review of apps for the United States and related processes, the development of relevant policies, and marketing for the App Store occur in Santa Clara County, California. *Id.* The same is true for Plaintiffs' allegations regarding Apple Pay, which is a payment processing business primarily managed out of Northern California. Thornberry Decl. ¶ 5. Indeed, in other cases involving Apple's App Store, courts have recognized that "California is the center of this type of economic activity." *See, e.g.*, *Opperman v. Path, Inc.*, 2013 WL 7753577, at *2, 4 (W.D. Tex. Jan. 15, 2013) (granting motion to transfer to the Northern District of California where "[a]ll allegations in this matter run through Apple and its app store"). Because a substantial part of the events that gave rise to Plaintiffs' claims against Apple occurred in the Northern District of California, venue is proper there.

10

## II. Transfer Would Advance the Interests of Justice and Be More Convenient for the Parties and Witnesses.

Where, as here, venue is proper in the transferee forum, the court next "balances private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer." *Garcia*, 2016 WL 5422018, at *3 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The "analysis is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citations omitted). Here, on balance, both the public and private interest factors support transfer.[3]

### A. The Private Interest Factors Favor Transfer.

The private interest factors relevant to a § 1404(a) transfer include: (1) the "plaintiff's forum preference as manifested in the original choice," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses . . . to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records." *Jumara*, 55 F.3d at 879.

---

[3] In moving for transfer based on analysis of the relevant public and private factors, Apple specifically reserves by this reference, and does not waive, any contractual right it may have, including the right to enforce its forum-selection and choice-of-law provisions.

### 1.   Plaintiff's Choice of Forum Should Be Given Minimal Weight.

Although Plaintiffs filed this action in the District of New Jersey, under the circumstances of this case the Court need not defer to their choice of forum for numerous reasons. *First*, Plaintiffs' choice of venue is entitled to less deference here because New Jersey "has little connection with the operative facts" of the case, which involve technologies and services that are managed out of Santa Clara County, California. Gamble Decl. ¶ 4; Thornberry Decl. ¶ 5. *See Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J. 1993) ("When the central facts of a lawsuit occur outside the forum state, a plaintiffs selection of that forum is entitled to less deference.").

*Second*, choice of forum "is accorded less weight when the chosen forum is not the plaintiff's home forum." *LG Elec., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2011). Although Plaintiff Bargo is a resident of New Jersey, Compl. ¶ 76, neither of the other two named plaintiffs resides in this District. *Id.* ¶¶ 81, 86 (alleging that Plaintiffs Prater and Pratt are residents of New York). Indeed, Plaintiffs Prater and Pratt did not choose the District of New Jersey as the initial forum for their claims—they originally filed their claims in the Southern District of New York. *See Prater et al. v. Apple, Inc. et al.*, Case No. 1:24-CV-09237 (S.D.N.Y.).

*Third*, "in class action cases, a plaintiff's choice of forum is entitled to less deference." *Culp v. NFL Productions LLC*, 2014 WL 4828189, at \*4 (D.N.J. Sept. 29, 2014). As this Court has recognized, this is because "[i]n such actions the participation of the class representative is generally minimal." *Karimi v. Deutsche Bank Aktiengesellschaft*, 2022 WL 1001566, at \*4 (D.N.J. Mar. 31, 2022) (Salas, J.) (granting motion to transfer). Indeed, in addition to seeking to represent a New Jersey and New York subclass, Plaintiffs here assert claims on behalf of a nationwide class, so "potential members of the class will likely be scattered across the United States." Compl. ¶¶ 91–93; *Karami*, 2022 WL 1001566, at \*4.

### 2. Apple's Forum Preference Supports Transfer.

This factor concerns "the defendant's preference." *Jumara*, 55 F.3d at 879. For convenience, Apple and Apple Payments Inc. prefer to litigate this action in the Northern District of California—the District where Plaintiffs' claims arose, where three of the four Defendants reside, where the key witnesses are located, and where the related Casino Apps MDLs involving substantially similar claims and simulated casino-style apps are pending. Thus, this factor weighs heavily in favor of transfer.

### 3. Plaintiffs' Claims Arose in the Northern District of California.

"As a general rule, the preferred forum is that which is the center of gravity of the accused activity." *Garcia*, 2016 WL 5422018, at \*5. Courts determine the origin of a claim by looking to the "locus of the alleged culpable conduct." *Van*

13

*Cauwenberghe v. Biard*, 486 U.S. 517 (1988). Plaintiffs' gambling loss recovery, consumer protection, unjust enrichment, and RICO claims all arise from allegations that Defendants are engaged in an "unlawful gambling enterprise" by hosting and profiting off of Sweepstakes Casino apps on their platforms and "processing illicit transactions" through their payment processing systems. Compl. ¶ 11. Because Apple's App Store for the United States is managed at Apple's headquarters in Cupertino, California, decision-making regarding app review, hosting, and marketing is centered in the Northern District of California. Gamble Decl. ¶ 4. Likewise, while Apple Payments Inc. is headquartered in Texas, the Apple Pay payment processing business is managed out of Cupertino, California. Plaintiffs' claims against Apple and Apple Payments Inc. therefore arose in the Northern District of California because the challenged conduct, including the primary decision-making regarding the review of apps for the United States, the development of relevant policies, and processing of transactions, occurred there—*not* in this District. *See, e.g.*, *Deibler v. Basic Research, LLC*, 2023 WL 6058866, at *9 (D.N.J. Sept. 18, 2023) (in case alleging RICO claim and violation of New Jersey Consumer Fraud Act, finding that the company headquarters from which defendants "distributed products," disseminated product information, and engaged in "alleged racketeering scheme" was the place where claims arose); *Greenwald v. Holstein*, 2015 WL 12843229, at *8 (D.N.J. May 29, 2015) (concluding that "the locus of the

alleged culpable conduct relating to the claims occurred in Ohio," where defendants allegedly developed a plan to induce plaintiff to sell his shares in a company, despite the fact that the sale occurred in in New Jersey).

### 4. The Northern District of California Is a More Convenient Venue for the Witnesses.

Venue in the Northern District of California is more convenient for the majority of the Defendants' key witnesses. For Apple, employees who are knowledgeable about App Store review are located in California, where the App Store for the United States is managed. Gamble Decl. ¶ 4. Likewise, the Apple Pay business is also managed out of California, so individuals who are knowledgeable about the processing of payments made through Apple Pay are likely to be located there. Thornberry Decl. ¶¶ 5–6. There are no individuals located in the District of New Jersey who manage the App Store or the Apple Pay business. Gamble Decl. ¶ 5; Thornberry Decl. ¶ 7. By contrast, the only witness who is located in this District is Plaintiff Bargo—as Plaintiffs Prater and Pratt are not even residents of New Jersey. Compl. ¶¶ 76, 81, 86. In any event, the involvement of the named plaintiffs in this putative class action will likely be "minimal." *Karimi*, 2022 WL 1001566, at *4.

### 5. The Location of Documentary Evidence Does Not Favor Venue in this District.

Because this is a putative class action, "the bulk of the evidence will likely come from the defendant," *Geraci v. Red Robin International, Inc.*, 2019 WL

15

2574976, at *5 (D.N.J. June 24, 2019), and the majority of relevant books and records are most likely located in California, where Apple, Google, and Google Payments are headquartered, and where the technologies and services at issue (*i.e.* the App Store and Apple Pay) are managed. Compl. ¶¶ 15, 17–18; Gamble Decl. Decl. ¶ 4; Thornberry Decl. ¶ 5. Accordingly, the ease of access to documentary evidence in the Northern District of California favors transfer. *See, e.g.*, *Yama Seafood, Inc. v. International Payment Group, Inc.*, 2009 WL 10728604, at *2 n.4 (D.N.J. Jan. 8, 2009) (noting that "[i]ssues relating to access of proof and witnesses favor [the transferee forum] as a majority of the documentary evidence and witnesses are located [there]").

### B.    The Public Interest Factors Favor Transfer.

The public interest factors relevant when considering transfer include: "(i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty arising from court congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable law." *DG Vault, LLC v. Dunne*, 2020 WL 57876, at *6 (D.N.J. Jan. 6, 2020). When weighed in consideration of their relevance here, the public interest factors also support a transfer to the Northern District of California.

### 1. Any Judgment Could Be Enforced in the Northern District of California.

"[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *DG Vault*, 2020 WL 57876, at *6. Accordingly, Plaintiffs have no argument that they will not be able to enforce judgment in California. While this factor is neutral, every other public interest factor weighs in favor of a transfer to the Northern District of California.

### 2. Practical Considerations Support Transfer.

"Practical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Karimi*, 2022 WL 1001566, at *7. Transfer of this action to the Northern District of California will result in more expeditious and less expensive resolution for several reasons.

*First*, with the exception of Apple Payments Inc., all of the Defendants are headquartered in California, and thus, the relevant evidence, both testimonial and documentary, is located in California, not in New Jersey. Furthermore, while Apple Payments Inc. has its principal place of business in Texas, neither it nor the Apple Pay business are managed in New Jersey. The time and expense associated with requiring key witnesses for Defendants to travel thousands of miles to New Jersey could be significantly mitigated by litigating this action in the Northern District of California. *See, e.g.*, *Tang v. Eastman Kodak Company*, 2021 WL 2155057, at *9

17

(D.N.J. May 27, 2021) (transfer to New York would make trial "substantially easier on Defendants and witnesses" because they resided there). In contrast, while Plaintiff Bargo is a New Jersey resident, Compl. ¶ 76, he is the only party with a connection to this District.

*Second*, "[c]ourts in this district have found that the presence of a related pending action in the transferee court strongly favors transfer to "avoid duplicative litigation of the same issues and inconsistent results." *Dollinger v. Salomon Smith Barney Inc.*, 2001 WL 1917976, at *2 (D.N.J. Mar. 7, 2001). Because this action raises factual and legal questions that are common with the Casino Apps MDLs pending in the Northern District of California—and both actions assert claims based on Plaintiffs' alleged use of the High 5 Casino app—transfer would serve the interests of justice because it is likely to "conserve[] judicial resources." *Canon Financial Services, Inc. v. JL Barrett Corp.*, 2010 WL 4746242, at *3 (D.N.J. Nov. 16, 2010) (internal quotation marks omitted). Like the MDL, Plaintiffs here seek to represent classes of individuals who allegedly downloaded simulated casino-style apps from the Apple App Store and Google Play Store, and acquired virtual currency through in-app purchases to access digital content within the apps. Compl. ¶¶ 91–93. And like the plaintiffs in the MDL, the Plaintiffs assert claims under state gambling loss recovery statutes and consumer protection laws, and assert federal civil RICO claims. *Id.* ¶ 75.

18

Plaintiffs may argue that their claims here are different because the apps also involve sweepstakes tokens that can be redeemed for prizes with cash value (*i.e.* sweepstakes-style games), while the MDL involves virtual coins that can be used only for additional gameplay. But while that matters for centralization under § 1407 (as the JPML found), even *without* "mirror image cases where . . . the issues perfectly align," transfer under § 1404(a) can still promote efficiency where the subject matter of the "cases substantially overlaps." *See Culp*, 2014 WL 4828189, at *4 (granting motion to transfer).

Judge Davila in the Northern District of California, who presides over the Casino Apps MDL, has already read hundreds of pages of briefs and heard extensive oral argument regarding application of the New York and New Jersey gambling loss recovery statutes and civil RICO, to alleged hosting and payment processing for simulated casino apps by Apple and Google. Judge Davila is also familiar with the factual allegations that Apple unlawfully hosts casino-style apps in its App Store and collects up to 30% of the revenue from in-app sales within the challenged and purportedly unlawful apps—key factual assertions that are also at issue here. *See* Compl. ¶¶ 4, 60. That court has taken motions to dismiss on those issues under submission. *In re: Apple Inc. App Store Simulated Casino-Stye Games Litig.*, Case No. 5:21-md-02985-EJD (N.D. Cal.) ECF 160; *In re: Google Play Store Simulated Casino-Style Games Litig.*, Case No. 5:21-md-03001-EJD (N.D. Cal.) ECF 140.

Transfer creates the potential opportunity for Judge Davila, who could be assigned this case upon transfer because he presides over first-filed related cases, to apply his familiarity with these factual and legal issues in overseeing this case. It also would promote efficiency by allowing a single judge to coordinate discovery informally between the actions, including through coordinated depositions.

Given the overlap in allegations between this action and the MDLs, transfer could thus conserve judicial resources and avoid duplicative litigation. *See, e.g.*, *In re Exxon Mobil Corp. Deriv. Litig.*, 2020 WL 5525537, at *4 (D.N.J. Sept. 15, 2020) (where "nearly identical" cases "are already underway" in a different district, "it would be far for more efficient for this case to join the others").

### 3. The Relative Caseload in the District of New Jersey Weighs in Favor of Transfer.

Courts in this District have noted "the great congestion this Court currently faces" in granting motions to transfer. *See Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 615 (D.N.J. Mar. 30, 2023). According to the caseload statistics published by the Administrative Office of the United States Courts, as of June 30, 2025, there were approximately 91,711 cases pending in the District of New Jersey, compared to the approximate 14,477 cases pending in the Northern District of California. *See* Admin. Off. U.S. Courts, United States District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30, 2025), https://www.uscourts.gov/ sites/default/files/document/fcms_na_distprofile0630.2025.pdf (last visited

20

Sept. 29, 2025); *U.S. District Court — Judicial Caseload Profile: NEW JERSEY, U.S. District Courts* at 15, available at fcms_na_distprofile0331.2025.pdf (last visited Sept. 29, 2025). Thus, the District of New Jersey has approximately over *six* times as many active cases as the Northern District of California, while these two districts have a similar number of judges.[4] Indeed, courts have recognized that "New Jersey faces the most significant backlog of cases in the country." See *Tang*, 2021 WL 2155057, at *9; *see also Fung v. Liberty University*, 2025 WL 2017223, at *6 (D.N.J. July 18, 2025) (granting transfer, in part because "New Jersey is an extremely busy district."); *Gulden v. Exxon Mobil Corp.*, 2025 WL 1549313, at *11 (D.N.J. May 30, 2025) (granting transfer, in part "due to the great congestion this Court currently faces").

### 4. California, Where This Case Arises, Has a Strong Local Interest.

"The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose." *LG Elecs., Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001). As explained, nearly all aspects of Plaintiffs' claims are local to California: all of Plaintiffs' claims

---

[4] See *Judges*, United States District Court for Northern District of California, available at https://cand.uscourts.gov/judges/ (last visited Sept. 29, 2025) (24 district judges and 13 magistrate judges); *Our Judges*, United States District Court for the District of New Jersey, *available at* https://www.njd.uscourts.gov/our-judges (last visited Sept. 29, 2025) (21 district judges and 17 magistrate judges).

arose there, all Defendants reside there, and defense witnesses and evidence are located there. Conversely, "only one named plaintiff is a New Jersey Resident." *Culp*, 2014 WL 4828189, at \*7. "Thus, New Jersey has little interest in the claims of the other named plaintiffs." *Id.* Because California "has a compelling interest in regulating its businesses or in litigating matters that arise from action occurring within its jurisdiction," this factor heavily weighs in favor of transfer. *HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, 2009 WL 2589108, at \*4 (D.N.J. Aug. 21, 2009).

> **5.    The New Jersey Public Policy Against Burdening Local Jurors with Deciding Out-of-State Disputes Supports Transfer.**

New Jersey "has a public policy to reserve its limited judicial resources, or at least not waste them on litigation with no meaningful connection to the state." *Tang*, 2021 WL 2155057, at \*10. Numerous courts in this District have recognized that "New Jersey jurors should not be burdened with adjudicating matters concerning decisions and/or conduct which occurred almost exclusively outside the State of New Jersey." *In re Exxon Mobil Corp. Deriv. Litig.*, 2020 WL 5525537, at \*4 (granting motion to transfer); *see also Govan v. U.S.*, 2009 WL 10664440, at \*4 (D.N.J. Dec. 22, 2009) ("The burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation.") (cleaned up).

### 6. The Northern District of California, San Jose Division, is Well-Equipped to Apply Relevant Law.

Finally, as to the familiarity of the transferee district with applicable state law, while this District is presumably more familiar with New Jersey law, this action also involves claims under New York law, and there can be no argument that the Northern District of California is less equipped to apply New York law than this District. In any event, courts in this District frequently acknowledge that "federal courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases." *DiMarco v. Coates*, 2020 WL 5593767, at *3 (D.N.J. Sept. 18, 2020) (granting transfer); *see also Groeneveld v. Verb Technology Company, Inc.*, 2024 WL 1253296, at *5 (D.N.J. Mar. 25, 2024) ("[D]istrict courts are frequently called upon to interpret and apply the law of a state other than that in which they sit.").

The balance of all relevant private and public factors weighs heavily in favor of transfer to the Northern District of California. Because Apple is headquartered in Santa Clara County, California, and the Apple App Store for the United States and Apple Pay management decisions related to Plaintiffs' claims were made there, "a substantial part of the events or omissions giving rise to the claim occurred" in Santa Clara County. N.D. Cal. Local Rule 3-2(c). This action should accordingly be assigned to the San Jose Division of the Northern District of California. N.D. Cal. Local Rule 3-2(e) ("all civil actions that arise in the counties of Santa Clara, Santa Cruz, San Benito or Monterey shall be assigned to the San Jose Division").

23

## <u>CONCLUSION</u>

For the foregoing reasons, Apple and Apple Payments Inc. request that the

Court transfer this action to the Northern District of California pursuant to 28 U.S.C.

§ 1404(a), and specifically to the San Jose Division of that District pursuant to N.D.

Cal. Local Rule 3-2(c), (e).

Dated:  September 29, 2025

Respectfully submitted,
**DLA PIPER LLP (US)**

<u>*s/ Marc A. Silverman*</u>
Marc A. Silverman
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
(212) 335-4828
marc.silverman@us.dlapiper.com

John Samuel Gibson (CA Bar No. 140647)
(admitted *pro hac vice*)
john.gibson@us.dlapiper.com
Colin McGrath (CA Bar No. 351947 / NY
Bar No. 5494513)
(admitted *pro hac vice*)
colin.mcgrath@us.dlapiper.com
2000 Ave of the Stars,
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: 310.595.3039

*Attorneys for Defendants*
*Apple Inc. and Apple Payments Inc.*

24

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on this 29th day of September 2025, the foregoing **Defendant Apple Inc. and Apple Payments Inc.'s Memorandum of Law in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404** was filed electronically. Notice of this filing will be sent by email to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated:  September 29, 2025

Respectfully submitted,

*s/ Marc A. Silverman*
Marc A. Silverman
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
(212) 335-4828
marc.silverman@us.dlapiper.com

*Attorneys for Defendants*
*Apple Inc. and Apple Payments Inc.*