Caroline Pignatelli (N.J. Attorney No. 026292007)
**COOLEY LLP**
55 Hudson Yards
New York, New York 10001-2157
T: (212) 479-6000
F: (212) 479-6275
cpignatelli@cooley.com


Teresa Michaud (*admitted pro hac vice*)
**COOLEY LLP**
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
T: (213) 561-3250
F: (213) 561-3244
tmichaud@cooley.com

*Attorneys for Defendants*
*GOOGLE LLC and GOOGLE PAYMENT CORP.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIAN BARGO, LAMAR PRATER and REBECCA PRATT, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP., <br><br> Defendants. | Civil Action No. 2:25-cv-02025 <br><br> Hon. Esther Salas, U.S.D.J. <br> Hon. Leda D. Wettre, U.S.M.J. <br><br><br> **GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404** <br><br> ***Document Electronically Filed*** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.....................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................3

      A.      The Parties.................................................................................3

      B.      Google's Alleged Conduct ........................................................4

      C.      Plaintiff Pratt's Claims are Governed by the Forum Selection Clause in Google's Terms of Service.......................................4

      D.      Plaintiffs' Claims........................................................................6

      E.      Procedural History .....................................................................7

III.    LEGAL STANDARD .........................................................................8

IV.     ARGUMENT ....................................................................................10

      A.      Plaintiff Pratt Agreed to a Valid Forum Selection Clause that Governs Her Disputes and Requires Her Claims to be Litigated in the Northern District of California ...............................................................10

      B.      The Public Interest Factors Overwhelmingly Favor Transfer ...............15

V.      CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abid v. Google, Inc.*,
2017 WL 11048805 (M.D.N.C. Oct. 12, 2017)....................................................12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)............................................................................................8, 9

*Beaumont v. Vanguard Logistics Servs. (USA), Inc.*,
615 F. Supp. 3d 253 (D.N.J. 2022)................................................................11, 12

*Beychok v. Baffert*,
717 F. Supp. 3d 392 (D.N.J. 2024)..................................................8, 15, 16, 19

*Biltz v. Google, Inc.*,
2018 WL 3340567 (D. Haw. July 6, 2018) .......................................................12

*Care One, LLC v. NLRB*,
680 F. Supp. 3d 540 (D.N.J. 2023)..............................................................15, 16

*In re CityMD Data Priv. Litig.*,
2025 WL 2505655 (D.N.J. Sept. 2, 2025)..........................................................19

*D'Ambola v. Daily Harvest, Inc.*,
2023 WL 3720888 (D.N.J. May 30, 2023)....................................................11, 12

*Feldman v. Google, Inc.*,
513 F. Supp. 2d 229 (E.D. Pa. 2007)..................................................................13

*Fung v. Liberty Univ.*,
2025 WL 2017223 (D.N.J. July 18, 2025) ...................................................18, 19

*Gafner v. Oasis Legal Fin., LLC*,
2024 WL 1190741 (D.N.J. Mar. 19, 2024) ..................................................18, 19

*Geraci v. Red Robin Int'l, Inc.*,
2019 WL 2574976 (D.N.J. June 24, 2019)..........................................................17

*In re Google Play Store Simulated Casino-Style Games Litig.*,
No. 21-md-3001 (N.D. Cal. 2021)................................................................16, 20

# TABLE OF AUTHORITIES

**Page(s)**

*Gulden v. Exxon Mobil Corp.*,
  2025 WL 1549313 (D.N.J. May 30, 2025)............................................15, 16, 18

*Hobbi v. 2U, Inc.*,
  2025 WL 2308526 (D.N.J. Aug. 11, 2025) ........................................................9

*Job Haines Home for the Aged v. Young*,
  936 F. Supp. 223 (D.N.J. 1996).........................................................................17

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ...........................................................................8, 15

*Matias v. Abbott Lab'ys*,
  2025 WL 2110241 (D.N.J. July 29, 2025) ..................................................19, 20

*Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*,
  305 F. Supp. 3d 580 (D.N.J. 2018).................................................................11, 13

*Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*,
  2010 WL 1381005 (D.N.J. Apr. 1, 2010) ........................................................ 14

*Radiology Ctr. at Harding, Inc. v. Hitachi Healthcare Ams.*,
  2024 WL 139486 (D.N.J. Jan. 12, 2024)....................................................9, 10, 15

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016)............................................................12

*Svenson v. Google LLC*,
  2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)...................................................11

*TradeComet.com LLC v. Google, Inc.*,
  693 F. Supp. 2d 370 (S.D.N.Y. 2010) ............................................................. 13

*Trump v. YouTube, LLC*,
  2021 WL 8398892 (S.D. Fla. Oct. 6, 2021) ...................................................... 13

*Wall St. Aubrey Golf, LLC v. Aubrey*,
  189 F. App'x 82 (3d Cir. 2006)...................................................................11, 13

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C.

§ 84(a) ........................................................................................................6

§ 1404.............................................................................................*passim*

§ 1407.................................................................................7, 10, 16

## I.    INTRODUCTION[1]

Google LLC and Google Payment Corp. (together, "Google") seek to transfer this putative class action to the Northern District of California under 28 U.S.C. § 1404(a) because the parties agreed to litigate disputes with Google there and Google is based in that forum.  In this matter, a New York (not New Jersey) resident seeks to hold Google liable for third-party developers' allegedly illegal gambling software on the theory that Google provided these third parties with the same neutral platform and optional payment processing mechanism it provides to all third-party app developers globally.  Although Google maintains that it cannot be held liable under Plaintiffs' theories, the present threshold issue is one of forum: the claims against Google have no unique connection to New Jersey.

***First***, the only Plaintiff with claims against Google, Rebecca Pratt, agreed to bring her claims "exclusively in the federal or state courts of Santa Clara County, California."  Similarly, if Plaintiffs Bargo and Prater, who have claims against the Apple Defendants, agreed to Apple's applicable Terms and Conditions,  they would also be subject to a Santa Clara County forum-selection clause.[2]   Courts in this

---

[1] Google understands that Apple Inc. ("Apple") and Apple Payments Inc. (together, the "Apple Defendants") are also filing a motion to transfer this action to the Northern District of California.  Google incorporates by reference and joins in the Apple Defendants' arguments in its concurrently filed motion.

[2] *See* https://www.apple.com/legal/internet-services/itunes/.

district routinely enforce forum selection clauses like this one, and the Court should do the same here.

**Second**, notwithstanding the forum selection clause, any relevant activity allegedly taken by Google would have occurred in Northern California. This is where Google (and Apple) are headquartered and where relevant witnesses and evidence are located. Plaintiffs' allegations focus on the operation of the Google Play Store and Google Pay, and the Apple App Store and Apple Pay. A Section 1404(a) transfer is proper because this case could have (and should have) been filed at the outset in the United States District Court for the Northern District of California where the decisions and operations of the Defendants take place for these services.

In addition to these private factors weighing in favor of the transfer, there are zero public interest factors that prevent transfer. Plaintiffs do not allege that their claims—which they seek to bring on behalf of a nationwide class, along with subclasses for New York and New Jersey residents—are based on any conduct of Google's specific to New Jersey (or even New York). Binding Supreme Court precedent requires transfer to the Northern District of California, which encompasses Santa Clara County.

For these reasons, and those discussed in further detail below, Google respectfully requests that the Court transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Google is headquartered in Mountain View, California.  (Compl. ¶¶ 17, 18.) Google owns and operates the Play Store, which is an online platform through which individuals can download mobile applications (or "apps") to their phones or tablets. (*Id.* ¶ 17.)  "[T]housands of software developers" make apps that can be downloaded through the Play Store.  (*See id.* ¶ 60.)  Google does not charge a fee for the publication of apps that are free to consumers.  (*Id.* ¶ 62.)  If third-party app developers choose to create virtual content to sell to consumers within their apps, Google provides those developers with the option of using its payment processing service, Google Pay, for such transactions.  (*Id.* ¶¶ 62, 65.)

Apple Inc. is headquartered in Cupertino, California.  (Compl. ¶ 15.)  Apple owns and operates the Apple App Store, which is an online platform through which individuals can download apps to their phones or tablets.  (*Id.* ¶ 15.)  Plaintiffs also include Apple Payments Inc. as a defendant based on allegations that it operates Apple Pay, a payment processing service, (*id.* ¶ 16)*, which is primarily managed out of Cupertino, California.

Plaintiff Rebecca Pratt, a New York resident, is the only named plaintiff who allegedly used Google's products.  (Compl. ¶¶ 86–90.)  Plaintiff Julian Bargo, a New Jersey resident, and Plaintiff Lamar Prater, a New York resident, allegedly used

Apple's products.  (*Id.* ¶¶ 76–85.)  Thus, no Plaintiff in this action with a claim against Google is a resident of this jurisdiction.

> **B.     Google's Alleged Conduct**

Plaintiffs allege that a "dozen or so" third parties, which Plaintiffs term "Sweepstakes Casinos," have developed mobile apps and websites that "offer games of chance that mirror the games typically found in traditional brick-and-mortar casinos, like slot machines, blackjack, poker, roulette and other forms of lottery wheel."  (Compl. ¶ 2.)  Plaintiffs allege that gameplay of the apps constitutes unlawful gambling under New York and New Jersey law, and that Google is involved in an "interstate gambling scheme" by "tak[ing] up to 30% of all revenues generated by app sales through the [Google] Play Store and the [Apple] App Store," and "provid[ing] marketing guidance [and] promotional tools" to developers.  (*Id.* ¶¶ 59, 60, 63.)  Plaintiffs further allege that Google and Apple give consumers the option to pay for in-app purchases using their payment processing services (*e.g.*, Google Pay), and thereby "directly profit[] from" and "act[] as a cashier's window for" the challenged apps.  (*Id.* ¶ 67.)

> **C.     Plaintiff Pratt's Claims are Governed by the Forum Selection Clause in Google's Terms of Service**

Plaintiff Pratt "downloaded the Chumba Casino app to her Android phone from Google's Play Store," "purchased Gold Coins from Chumba Casino using Google Pay . . . which she then wagered on her Android-based phone."  Compl. ¶ 88.

The Google Play Terms of Service ("Play Terms") govern the relationship between Google and users of the Play Store, and incorporate the Google Terms of Service ("Google Terms").  (*See* Decl. of Joseph Mills ("Mills Decl.") ¶¶ 6, 11; *id.*, Ex. 2 § 1[3]; Ex. 3 § 1.)  When a user first sets up an Android device, she must agree to the Play Terms.  (Mills Decl. ¶ 5; *see also* Ex. 1.)  The Play Terms clearly inform users that their "use of Google Play and the apps . . . or other digital content or services (referred to as 'Content') available through it is subject to these Google Play Terms . . . and the Google Terms of Service."  (Ex. 2 § 1; Ex. 3 § 1.)  The Play Terms also make clear to users that they agree to the Play Terms by using Google Play, including by "download[ing] Content for your mobile . . . device."  (Ex. 2 § 2; Ex. 3 § 2.)  Likewise, the Google Pay Terms of Service ("Pay Terms") expressly incorporate the Google Terms, and inform users that their use of Google Pay, which permits users to save payment methods they can use to "pay . . . in apps" (among other uses), requires agreement to the Pay Terms.  (Mills Decl. ¶¶ 7, 13; *see also* Ex. 4 §§ 1, 3.)

At all times relevant here, the Google Terms have included an express forum selection clause designating the courts in Santa Clara County, California, as the exclusive venue for litigation arising out of the Google Play and Google Pay services.  (*See* Mills Decl. ¶ 15; Ex. 5 at p. 16/20.)  The current version of the forum-selection clause states the following:

---

[3] All exhibit citations refer to exhibits to the Mills Declaration.

> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

(Mills Decl. ¶ 15; Ex. 5 at p. 16/20.)  The Play Terms and Pay Terms both inform users that Google Play and Google Pay, respectively, are services as defined in the Google Terms.  (Mills Decl. ¶¶ 11, 13; Ex. 2 § 1; Ex. 3 § 1; Ex. 4 § 1.)

Santa Clara County is located in the Northern District of California.  *See* 28 U.S.C. § 84(a) (including Santa Clara in list of counties within district).

### D.    Plaintiffs' Claims

Based on the above allegations, Plaintiffs bring eight claims against Google and the Apple Defendants, namely, claims under New Jersey's gambling loss recovery and consumer protection statutes and its unjust enrichment law; claims under New York's gambling loss recovery and consumer protection statutes and unjust enrichment law; and two federal RICO claims for engaging and conspiring to engage in racketeering activities.  The two RICO claims are purportedly brought on behalf of a nationwide class, while the New Jersey and New York claims are respectively brought on behalf of New Jersey and New York subclasses.  (*See generally* Compl. ¶¶ 102–196.)

### E.    Procedural History

Plaintiffs filed this action on March 21, 2025.  (*See* Compl.)  Google waived service, and its initial responsive pleading was due on June 2, 2025.  (*See* Dkt. Nos. 10, 11.)  On May 5, 2025, Google notified the Court that it had filed a motion to consolidate this action with a multi-district litigation (the "MDL") pending in the Northern District of California, pursuant to 28 U.S.C. § 1407.  (*See* Dkt. No. 18.) Less than two weeks later, the Court granted the parties' stipulated request to stay all proceedings in this action until 30 days after the Judicial Panel on Multidistrict Litigation (the "Panel" or "JPML") resolved the consolidation issue.  (*See* Dkt. No. 33.)

On August 7, 2025, the Panel denied consolidation with the MDL under Section 1407 on the ground that this action did not share sufficiently common factual questions with the MDL.  (*See* Dkt. No. 34 at 2.)  Accordingly, the stay of this action lifted and Google's responsive pleading became due on September 29, 2025.

On September 22, 2025, the Court approved the parties' stipulated briefing schedule whereby Defendants would file any motions to transfer pursuant to 28 U.S.C. § 1404(a) by September 29, 2025.[4]  (Dkt. No. 36.)  This motion follows.

---

[4] The Court's order also approved the parties' stipulation that Defendants' responsive pleading deadlines shall be extended until 30 days after the Court resolves the motions to transfer.  Google accordingly reserves its right to bring a motion to dismiss Plaintiffs' complaint in any forum.

## III.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any district court where it could have originally been brought, "[f]or the convenience of parties and witnesses, in the interest of justice[.]"  28 U.S.C. § 1404(a).  District courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

Generally, the moving party bears the burden of establishing that a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice."  28 U.S.C. § 1404(a); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013).  Under the regular Section 1404(a) analysis, courts determine "whether the potential transferee forum is one where the action 'might have been brought'" and then balance public interest and private interest factors to determine whether transfer would cause "the litigation [to] more conveniently proceed and the interests of justice be better served.'" *Beychok v. Baffert*, 717 F. Supp. 3d 392, 401–02 (D.N.J. 2024) (citations omitted).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 571 U.S. at 63 (citation omitted).

Where such a clause exists, Supreme Court precedent requires courts "to adjust their usual § 1404(a) analysis in three ways." [5]  *Id.*  First, the plaintiff's choice of forum "merits no weight" and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63.  Second, the court "should not consider arguments about the parties' private interests" and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64.  Thus, the district court "only considers public interest factors, rather than the parties' purported private interests." *Hobbi v. 2U, Inc.*, 2025 WL 2308526, at *2 (D.N.J. Aug. 11, 2025) (citing *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018)).  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

"To summarize, 'before enforcing a forum-selection clause, a court must determine that: (1) the clause is valid; (2) it governs the dispute; and (3) public-interest factors do not override the parties' contractual choice of venue.'" *Radiology*

---

[5] This Motion focuses on Google's forum selection clause.  Additionally, the Apple Defendants' motion shows that both the private and public factors on balance strongly support transfer to the Northern District of California, and Google joins in those arguments.

*Ctr. at Harding, Inc. v. Hitachi Healthcare Ams.*, 2024 WL 139486, at *2 (D.N.J. Jan. 12, 2024) (citation omitted).  The Supreme Court has held that valid forum-selection clauses should be enforced and Section 1404(a) motions be granted absent "extraordinary circumstances unrelated to the convenience of the parties."  *Alt. Marine*, 571 U.S. at 62.  As set forth below, no such circumstances exist here.

Further, the JPML's decision against consolidation of this action with the MDL has no bearing on the Court's analysis of the present motion to transfer.  This is because the analysis for a motion to transfer under 28 U.S.C. § 1404 is entirely distinct from the analysis for a motion to consolidate actions into a multi-district litigation under 28 U.S.C. § 1407—the former addresses party and witness convenience and the interests of justice with respect to the forum, while the latter evaluates whether two or more actions share a common factual core.

## IV.    ARGUMENT

### A.    Plaintiff Pratt Agreed to a Valid Forum Selection Clause that Governs Her Disputes and Requires Her Claims to be Litigated in the Northern District of California

Plaintiff Pratt is bound by the Google Terms, including its forum selection clause mandating that any dispute about services, including Google Play and Google Pay, be resolved in California.  Plaintiff alleges that she used the Google Play Store by downloading the Chumba Casino app, and then used Google Pay to purchase digital coins that she then used to play a game within the app. (Compl. ¶ 88.)  These

allegations are the only factual basis for the claims against Google.  As shown in the accompanying Declaration of Joseph Mills, in taking the actions of downloading an app from the Google Play Store and using Google Pay, Plaintiff necessarily agreed to the Google Terms incorporated therein.  (*See* Mills Decl. ¶¶ 5–9; *see also, e.g.*, Ex. 1.)  *See also, e.g.*, *Svenson v. Google LLC*, 2016 WL 8943301, at * 2 (N.D. Cal. Dec. 21, 2016) ("In order to purchase an App on Google Play, the Buyer is required to click a 'Buy' button, signifying agreement to the Play Terms[.]").

The forum selection clause in the Google Terms is valid and enforceable for the following reasons:

*First*, "[f]orum selection clauses are presumptively valid and enforceable." *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 584 (D.N.J. 2018) (citing *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84 (3d Cir. 2006)); *see also, e.g.*, *D'Ambola v. Daily Harvest, Inc.*, 2023 WL 3720888, at *3 (D.N.J. May 30, 2023) ("In the Third Circuit, forum selection clauses are presumptively valid and will be enforced." (citations omitted).)  This presumption of validity "give[s] effect to the freely negotiated terms of a contract and uphold[s] the expectations of the contracting parties."  *Nitterhouse*, 305 F. Supp. 3d at 584 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).  Further, the presumption applies "even when [the clause] is part of an adhesion contract."

*Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 260 (D.N.J. 2022) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)).

To overcome the presumption that a forum selection clause is valid and enforceable, Plaintiffs would have to meet the "heavy burden" of showing "(1) that [the clause] is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable." *D'Ambola*, 2023 WL 3720888, at *3 (quoting *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 846 (3d Cir. 2003)).

Plaintiffs cannot meet this burden, and in fact courts across the country **routinely enforce Google's clause** at issue here, sending cases to Santa Clara County. *See, e.g.*, *Abid v. Google, Inc.*, 2017 WL 11048805, at *3 (M.D.N.C. Oct. 12, 2017) ("Plaintiff fails to establish any basis for showing that enforcement of the forum selection clause would be unreasonable."); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1107 (N.D. Cal. 2016) ("The District of Massachusetts, over Plaintiff's objection, found the Terms of Service applied to her claim and transferred the case to the Northern District of California in August 2015 while declining to rule on the motion to dismiss.") (citation omitted); *Biltz v. Google, Inc.*, 2018 WL 3340567, at *7 (D. Haw. July 6, 2018) ("[T]he Court finds that there is no reason to disturb the forum selection clause outcome of Santa Clara County, California.").

***Second***, the forum-selection clause is mandatory because it "provid[es] the sole forum available for resolution of the claims, rather than . . . providing one of many possible fora." *Nitterhouse*, 305 F. Supp. 3d at 587 (citing *Wall Street Aubrey Golf*, 189 F. App'x at 85; *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 687 (D.N.J. 1998)).  The Google Terms contain a quintessential mandatory forum-selection clause, which provides that covered claims arising out of or relating to the terms "will be litigated ***exclusively*** in the federal or state courts of Santa Clara County, California, USA."  (*See* Mills Decl. ¶ 15; Ex. 5 at p. 16/20 (emphasis added).)  There is nothing permissive about this clause; the parties unambiguously agreed to litigate any claims *exclusively* in Santa Clara County, California.  Courts evaluating the same or similar language find it to be mandatory. *See, e.g.*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246 (E.D. Pa. 2007) (forum selection clause stating agreement "must be . . . adjudicated in Santa Clara County" was "clear and explicit" and "mandatory" (citation omitted)); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) ("Here, the forum selection clause clearly contains compulsory language specifying venue, which is sufficient to make the clause mandatory for purposes of this analysis."); *Trump v. YouTube, LLC*, 2021 WL 8398892, at *6 (S.D. Fla. Oct. 6, 2021) (holding that identical forum selection clause in the YouTube Terms of Service "is mandatory, not permissive, based on a plain reading of the entire clause").

***Third***, the forum selection clause governs Plaintiff Pratt's claims in this action. The Google Terms state that "all disputes arising out of or relating to these terms . . . or any related services," including Google Play and Google Pay, "will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA." (Mills Decl. ¶ 15; Ex. 5 at p. 16/20.) Plaintiff's claims satisfy both aspects of the clause. There is no serious question that Plaintiff's claims arise out of or relate to the "services," which is defined in the Google Terms to include Google Play and Google Pay, and which is also clearly and separately stated in the Play Terms and the Pay Terms. (Mills Decl. ¶¶ 14, 15; *see also* Ex. 2 § 1; Ex. 3 § 1; Ex. 4 § 1.) The heart of this case is that Google, by providing the Google Play platform and the Google Pay payment service (and Apple, for its corresponding services), have allegedly participated in an unlawful gambling operation with respect to the Sweepstakes Casinos. (*See, e.g.*, Compl. ¶ 11.) Such claims clearly "aris[e] out of or relat[e] to" the Google Play and Google Pay services, and are thus encompassed by the broad forum-selection clause in the Google Terms. *See, e.g.*, *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, 2010 WL 1381005, at *5–6 (D.N.J. Apr. 1, 2010) (finding action "relate[d] to" Google service "and thus falls within the scope of the mandatory forum selection clause" where "[a]ll but one of [plaintiff's] claims are predicated on allegations involving Google's" relevant services).

**B.     The Public Interest Factors Overwhelmingly Favor Transfer**

"Once a district court determines that a forum-selection clause is valid and applies to a dispute between parties, it 'may consider arguments about public-interest factors only' before granting a motion to transfer." *Radiology Ctr.*, 2024 WL 139486, at *4 (citations omitted).  New Jersey courts consider six public interest factors in evaluating transfer under Section 1404(a): "[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases." *Beychok*, 717 F. Supp. 3d at 404–05.  These factors all weigh in favor of transfer.

***First***, practical considerations strongly favor transfer to the Northern District of California.  Courts consider any "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  "This factor, like many of the so-called public interest factors, is principally concerned with judicial economy and the overarching interests of justice." *Care One, LLC v. NLRB*, 680 F. Supp. 3d 540, 547 (D.N.J. 2023).  Here, one practical consideration in favor of transfer is that because Google's headquarters and the decision-making center for the services at issue here are in Northern California (*see* Mills Decl. ¶ 4), multiple

of Google's "witnesses are likely outside of this Court's subpoena power." *See Gulden v. Exxon Mobil Corp.*, 2025 WL 1549313, at *10 (D.N.J. May 30, 2025) (finding factor favored transfer from District of New Jersey) (citations omitted).

Another practical consideration in this case is that at least one judge in the Northern District of California presides over numerous cases against Google and Apple that raise claims and questions of law which overlap with those raised in this action. *See, e.g.*, *In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-3001 (N.D. Cal. 2021). Google does not seek to relitigate the JPML's finding under Section 1407, but recognizes that the action, if transferred, may be considered administratively related to the MDL for efficiency purposes. In that case, "given the work that has already been invested" in those cases, transferring could "save a good deal of judicial time." *Beychok*, 717 F. Supp. 3d at 410 (practical considerations "cut strongly in favor of transfer" where transferee court "has already resolved, on the merits, a case that is closely similar to this one"); *see also Care One*, 680 F. Supp. 3d at 548–59 (practical considerations strongly favored transfer to the District of Connecticut, which "had already reached and resolved an exceedingly close legal issue" and where that determination "likely constitutes law of the case," and "could presumably impact how the current . . . issue is assessed").

***Second***, the local interest in deciding a local controversy favors transfer because Google is headquartered in the Northern District of California and the alleged misconduct at issue is centered there. *See Geraci v. Red Robin Int'l, Inc.*, 2019 WL 2574976, at *4 (D.N.J. June 24, 2019) (holding local interests favored transfer because "Colorado has a more compelling interest in adjudicating . . . . a case about a company headquartered in Colorado allegedly harming citizens throughout the nation by using technology in Colorado to effect marketing decisions made in Colorado"). Plaintiff Pratt does not even reside in New Jersey; in fact, the three named plaintiffs reside hundreds of miles apart from each other across two states. (*See* Compl. ¶¶ 12–14.) Further, Plaintiffs' decision to bring this case as a putative class action with a nationwide class further weakens any local tie to New Jersey. *See, e.g.*, *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 229–35 (D.N.J. 1996) (transferring action to California where the defendants and evidence were in California, potential class members were apparently located all over the United States with claims under different state statutes, the case had nothing "specific to do with New Jersey, other than the fortuity of being the residence of the named class representative").

***Third***, the court congestion factor favors transfer.  Statistics published by the Administrative Office of the United States Courts[6] reflect that as of June 30, 2025, there were 91,711 cases pending in this District (5,395 pending cases per judgeship), compared to 14,477 cases pending in the Northern District of California (a difference of more than 77,000 cases), and 1,034 pending cases per judgeship. *See generally* Admin. Off. U.S. Courts, *United States District Courts – Combined Civil and Criminal Federal Court Management Statistics* (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2 025.pdf (last visited Sept. 28, 2025).  This factor accordingly weighs in favor of transferring the case to the Northern District of California.  *See Gulden*, 2025 WL 1549313, at *11 (holding this factor supported transfer from the District of New Jersey where Administrative Office statistics showed approximately 68,000 more cases in District of New Jersey than in the transferee district).

***Fourth***, the public policy factor favors transfer.  Notably, "New Jersey has a policy that favors the enforcement of forum selection clauses," and "New Jersey courts considering New Jersey consumer protection statutes routinely enforce forum selection clauses."  *Gafner v. Oasis Legal Fin., LLC*, 2024 WL 1190741, at

---

[6] "The Court may take judicial notice of statistics published on the official United States Courts website."  *See Fung v. Liberty Univ.*, 2025 WL 2017223, at *6 n.4 (D.N.J. July 18, 2025) (citing *United States v. H&R Block, Inc.*, 789 F. Supp. 2d 74, 84 & n.4 (D.D.C. 2011)).

*3 (D.N.J. Mar. 19, 2024) (citations omitted).  Further, because the conduct at issue took place in the Northern District of California, and "jury duty, a public interest consideration, should not be imposed on the citizens of New Jersey when nearly all of the events giving rise to the claim occurred outside the state."  *Fung*, 2025 WL 2017223, at *7 (citing *Rubes v. Kohl's*, 2017 WL 4167457, at *2 (D.N.J. Sept. 19, 2017)); *but see also Beychok*, 717 F. Supp. 3d at 411 (holding public policy factor bore no weight because no party had identified any potentially disparate public policies between the various fora).

The remaining public interest factors are neutral.  The enforceability of the judgment factor bears no weight, as there is nothing to suggest that a judgment would be more or less enforceable in the District of New Jersey versus the Northern District of California.  *See, e.g.*, *In re CityMD Data Priv. Litig.*, 2025 WL 2505655 , at *9 & n.14 (D.N.J. Sept. 2, 2025) (finding this factor neutral because 28 U.S.C. § 1963 provides that registration of district court's judgment in another district has same effect and enforcement).  And the factor of the trial judge's familiarity with the applicable law is also neutral, as "district courts are frequently called upon to interpret and apply the law of a state other than that in which they sit," and Plaintiffs' claims are not "so unique as to be beyond comprehension" of a judge in either

district.[7] *See Matias v. Abbott Lab'ys*, 2025 WL 2110241, at *10 (D.N.J. July 29, 2025) (citations omitted).

In sum, not only will Plaintiffs be unable to show that public interest factors "overwhelmingly" disfavor transfer such that the valid forum selection clause governing these claims should not be enforced, but in fact the public interest factors weigh strongly in favor of transfer.

## V.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to the United States District Court for the Northern District of California.

---

[7] For example, Judge Edward J. Davila of the Northern District of California is familiar with the New Jersey and federal RICO laws (and at least one of the New York laws) at issue here, with respect to Google's operation of the Google Play Store. *See In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-3001 (N.D. Cal. 2021).

Dated:        September 29, 2025        COOLEY LLP

By: */s/ Caroline Pignatelli*
       Caroline Pignatelli
       (N.J. Attorney No. 026292007)
       55 Hudson Yards
       New York, New York 10001-2157
       T: (212) 479-6679
       F: (212) 479-6275
       cpignatelli@cooley.com

       Teresa Michaud
       (*admitted pro hac vice*)
       355 South Grand Avenue, Suite 900
       Los Angeles, CA 90071-1560
       T: (213) 561-3250
       F: (213) 561-3244
       tmichaud@cooley.com

       ***Attorneys for Defendants***
       ***Google LLC and Google Payment Corp.***