**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIAN BARGO, LAMAR PRATER, and REBECCA PRATT, on behalf of themselves and others similarly situated, | Civil Action No.: 25-2025 (ES) (LDW) |
| Plaintiffs, | OPINION |
| v. | |
| APPLE, INC., APPLE PAYMENTS INC., GOOGLE LLC, and GOOGLE PAYMENT CORP., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court are two motions to transfer this matter to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404; one filed by Defendants Apple, Inc. and Apple Payments Inc. ("Apple") (D.E. No. 37) and the second filed by Defendants Google LLC and Google Payment Corp. (collectively "Google") (D.E. No. 38). The Court has carefully considered the parties' submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** both motions.

## I.    BACKGROUND AND PROCEDURAL HISTORY

In this putative class action, Plaintiffs allege that they lost money using "patently illegal gambling software" masquerading as virtual casino applications, or "apps", available on Defendants' respective platforms. (D.E. No. 1 ("Compl.") ¶¶ 1–14). Plaintiffs allege that non-party "Sweepstakes Casinos" operate apps that "evoke casino enterprises and offer games of

chance that mirror the games typically found in traditional brick-and-mortar casinos, like slot machines, blackjack, poker, roulette and other forms of lottery wheel." (*Id.* ¶ 2). Plaintiffs further allege that the Sweepstakes Casinos entice people to use those apps "by fraudulently representing that they provide free games of chance designed purely for fun and entertainment[,]" (*id.* ¶ 6), when, in reality, they "are in fact real casinos, where real money can be wagered and lost in exchange for the chance to win an arbitrary financial award[,]" (*id.*). More specifically, users can spend real money to purchase "utility tokens", which they can then redeem to wager on digital games of chance, but which have no cash value outside of the app. (*Id.* ¶¶ 7–8). When purchasing utility tokens, however, users also receive "a second class of virtual tokens that qualifies [them] for sweepstakes prizes". (*Id.* ¶ 8). Plaintiffs allege that this second type of currency, which they refer to as "Sweepstakes Coins" or "Sweeps Coins", "offer[s] users the prospect of an arbitrary financial windfall—*just like a traditional brick-and-mortar casino*." (*Id.* ¶ 9) (emphasis in original).

Plaintiffs contend that the Sweepstakes Casinos are, therefore, operating unlawful, unregulated gambling enterprises, (*see, e.g.*, *id.* ¶ 26), and that Defendants "assist, promote, and profit from this illegal scheme" by:

> (1) offering users access to the apps designed by the Sweepstakes Casinos through APPLE's App Store and GOOGLE's Play Store, thereby helping the Sweepstakes Casinos turn their customer's cell phones, iPads and tablets into illegal gambling devices and/or slot machines, as those terms are defined under state law; (2) taking a substantial percentage of consumer purchases of Game Coins, Sweeps Coins and other transactions within the apps distributed by the Sweepstakes Casinos through the App Store or Play Store, respectively; (3) processing illicit transactions between consumers and the Sweepstakes Casinos using their proprietary payment systems . . .; and (4) by using targeted advertising that, *inter alia*, employs search algorithms within GOOGLE's Chrome browser and APPLE's Safari browser to shepherd the most vulnerable customers

2

to the Sweepstakes Casinos' websites and apps, thereby facilitating
this unlawful gambling enterprise.

(*Id.* ¶ 11). Plaintiffs Julian Bargo and Lamar Prater allegedly lost money while using Sweepstakes Casino apps and purchasing virtual currency on Apple's platform. (*Id.* ¶¶ 77–85). Plaintiff Rebecca Pratt allegedly did so via Google's platform. (*Id.* ¶¶ 87–90).

Plaintiffs commenced this action by filing their Complaint on March 21, 2025, (*see generally id.*), and asserting claims under New Jersey statutory law, New York statutory law, the common law of both states, and the federal Racketeer Influenced and Corrupt Organizations Act, (*id.* ¶¶ 102–196). On or about May 5, 2025, Defendants filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer this matter into existing multidistrict litigation ("MDL") pending in the United States District Court for the Northern District of California. (D.E. No. 18). The Court stayed proceedings in this matter pending resolution of that application, (D.E. No. 30), which the JMPL ultimately denied on August 7, 2025, (D.E. No. 34).

By Order dated September 22, 2025, the Hon. Leda D. Wettre, U.S.M.J. set a briefing schedule for Defendants' anticipated motions to transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (D.E. No. 36). Apple and Google filed their respective motions on September 29, 2025, (D.E. Nos. 37 & 38), and both applications are fully briefed and ripe for adjudication. (*See* D.E. No. 37-1 ("Apple Mov. Br."), D.E. No. 40 ("Apple Opp. Br."), D.E. No. 41 ("Apple Reply Br."), D.E. No. 38-1 ("Google Mov. Br."), D.E. No. 39 ("Google Opp. Br.") & D.E. No. 42 ("Google Reply Br.")).

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

3

The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (internal quotation marks omitted). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Accordingly, when considering a motion to transfer pursuant to Section 1404(a), a court must determine: (i) whether the proposed forum is one in which plaintiff could have originally brought suit (or one to which the parties have consented), and (ii) whether transfer would be in the interest of justice and for the convenience of parties and witnesses. *Id.*

In performing this analysis, courts in the Third Circuit consider all "relevant public and private interests." *Id.* (citing *Jumara*, 55 F.3d at 879). Those private interests typically include (i) the plaintiff's forum preference; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties; (v) the convenience of the witnesses; and (vi) the location of books and records. *Jumara*, 55 F.3d at 879 (citations omitted). The relevant public interests include (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora from court congestion; (iv) the local interest in deciding controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80 (citations omitted). Courts have broad discretion when resolving a Section 1404(a) motion to transfer and must consider "convenience and fairness on a case-by-case basis." *Santi*, 722 F. Supp. 2d at 606; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Moreover, "[i]n deciding a § 1404(a) motion, a court is not limited to the pleadings, and may consider affidavits and other evidence." *Beaumont v. Vanguard Logistics Servs. (USA), Inc.*, 615 F. Supp. 3d 253, 259 (D.N.J. 2022) (citation omitted).

When the parties have agreed to a valid forum-selection clause, the Court must alter its § 1404(a) analysis in three significant ways. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "Specifically, district courts (1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62–65)). "The Supreme Court explained that, with these modifications to the typical § 1404(a) analysis, district courts should enforce valid forum-selection clauses '[i]n all but the most unusual cases.'" *Id.* (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 66). Finally, the Court notes that "[a]lthough the party seeking a § 1404(a) transfer usually bears the burden of persuasion . . . where there is a valid forum selection clause, the party seeking to avoid the clause bears the burden of showing that public interest factors 'overwhelmingly disfavor a transfer.'" *Beaumont*, 615 F. Supp. 3d at 260 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 66)).

## III.    DISCUSSION

While both Apple and Google seek the same relief, their applications involve different factual situations and, in turn, legal considerations. Specifically, Google contends that its relationship with Plaintiff Pratt is governed by a forum selection clause, while Apple does not make a similar argument with regard to Plaintiffs Bargo or Prater. (*Compare* Google Mov. Br.,

*with* Apple Mov. Br.).  The Court will, therefore, consider those motions separately.

> **A.      Apple's Motion to Transfer**
>
> > **i.      Plaintiffs Could Have Brought This Case in the Northern District of California**

As a threshold matter, the Court must determine whether Apple's proposed forum—the United States District Court for the Northern District of California—is one in which the case "might have been brought" originally, or one "to which all parties have consented."  28 U.S.C. §1404(a).  The Court finds that it is.

The Supreme Court has interpreted the "might have been brought" language of § 1404(a) as "permit[ting] transfer to any district where venue is also proper."  *Atl. Marine Constr. Co.*, 571 U.S. at 59.  The federal venue statute provides, in pertinent part, that "[a] civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  Here, Plaintiffs' claims against Apple are based on allegations that Apple improperly permitted the Sweepstakes Casinos to make their apps (and associated sales of digital currency) available on its platform, in exchange for a cut of the proceeds.  (Compl. ¶ 11).  Apple representatives have sworn, under penalty of perjury, that all of decision-making and policy-development relevant to this case occurred in Cupertino, Santa Clara County, California.  (*See generally* D.E. Nos. 37-2 & 37-3).  Santa Clara County falls within the Northern District of California.  Jurisdiction Map, United States District Court for the Northern District of California, https://cand.uscourts.gov/about-court/jurisdiction-map (last visited June 29, 2026).  Plaintiffs do not challenge Apple's representations or otherwise contend that venue would have been inappropriate in the Northern District of California.  (*See generally* Apple Opp. Br.).  As the record reflects that "a substantial part" of the alleged actions underlying Plaintiffs' claims took place in that district, the Court finds that venue would have been appropriate there pursuant to 28

U.S.C. § 1391(b)(2).

### ii.    Private Interest Factors

Having determined that Plaintiffs could have filed this suit in the Northern District of California, the Court must next determine "whether transfer would be in the interest of justice and for the convenience of the parties and witnesses" after considering the "relevant public and private interests[.]" *Santi*, 722 F. Supp. 2d at 606 (*citing Jumara*, 55 F.3d at 879). As noted above, the "private" interest factors typically include: (i) the plaintiff's forum preference; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties; (v) the convenience of the witnesses; and (vi) the location of books and records. *Jumara*, 55 F.3d at 879 (citations omitted).

### a.    The Parties' Choice of Fora and Where the Claims Arose

As the first three *Jumara* private interest factors are somewhat interrelated, the Court considers them together. Regarding the first factor, Courts typically afford a strong presumption in favor of a plaintiff's choice of forum. *See, e.g.*, *Windt v. Qwest Comm. Intern., Inc.*, 529 F.3d 183, 190 (3d Cir. 2008). Within the Third Circuit, "[a] plaintiff's choice of 'forum is a paramount consideration in any determination of a transfer request,' [and] 'should not be lightly disturbed.'" *Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) (first quoting Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); then quoting *Jumara*, 55 F.3d at 879). "The choice of forum is 'entitled to greater deference' when a plaintiff chooses his home forum." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 573 (D.N.J. 2000) (quoting *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999)).

"However, the plaintiff's choice 'is not necessarily decisive,' particularly where 'the central facts of the lawsuit did not occur' in the plaintiff's chosen forum." *Def. Distributed*, 617 Supp. 3d at 233 (quoting *Interlink Prods. Int'l, Inc. v. Crowfoot*, No. 20-10566, 2020 WL 6707946, at *7

7

(D.N.J. Nov. 16, 2020)). Indeed, courts afford a plaintiff's choice substantially less weight when the central facts of the lawsuit occurred outside of the forum state. *Kremer v. Lysich*, No. 18-03676 , 2019 WL 3423434, at *4 (D.N.J. July 30, 2019); *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (holding that a plaintiff's choice of venue is not "decisive," and that the choice is accorded less deference "when the central facts of a lawsuit occur outside of the chosen forum"). "In such circumstances, the defendant's choice may be accorded greater deference." *Humana Inc. v. Merck & Co.*, No. 23-23023, 2026 WL 96942, at *9 (D.N.J. Jan. 14, 2026) (citing *Virag, S.R.L. v. Sony Comput. Ent. Am., LLC*, No. 2015 WL 1469745, 2015 WL 1469745, at *6 (D.N.J. 2015)).

Moreover, a plaintiff's choice of forum "becomes substantially less important . . . when he sues representatively on behalf of a class." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) (collecting cases) (quotations omitted); *Gallagher v. Ocular Therapeutix, Inc.*, No. 17-5011, 2017 WL 4882487, at *4 (D.N.J. Oct. 27, 2017) (collecting cases in this District that have afforded less deference to plaintiffs' choice of forum in securities fraud class actions). "[I]n such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." *Santomenno v. Transamerica Life Ins. Co.*, No. 11-0736, 2012 WL 1113615, at *5 (D.N.J. Mar. 30, 2012) (quotations and citations omitted).

The third private interest factor—where the claims arose—is "most critical to the Court's analysis[,]" *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012), given its potential impact on the first and second factors. Indeed, "[a]s a general rule, the preferred forum is that which is the center of gravity of the accused activity." *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998). "The inquiry turns on

'which forum contains the center of gravity of the dispute, its events, and transactions.'" *Metro. Life Ins. Co.*, 2012 WL 4464026, at *6 (quoting *Park Inn Int'l, L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 377–78 (D.N.J. 2000)); *accord Halpern v. Centroid Sys., Inc.*, No. 24-07037, 2024 WL 4533370, at *10 (D.N.J. Oct. 21, 2024).

Mindful of these legal principles, the Court makes the following findings. First, the Court finds that Cupertino, California, which is in the Northern District of California, is the "center of gravity of the dispute" regarding Plaintiffs' claims against Apple. Those claims focus on Apple allegedly assisting and promoting an illicit gambling scheme by making Sweepstakes Casino apps available on its platform and processing (and taking a cut from) sales of digital currency in those apps. (Compl. ¶ 11). Apple representatives have submitted declarations, made under penalty of perjury, representing that both its "App Store" and payment platform are managed in Cupertino. (*See generally* D.E. Nos. 37-2 and 37-3). For instance, Apple's "Senior Manager, Policy & Escalations", who manages teams responsible for "the enforcement of policies applicable to the review of [apps], compliance with Apple's App Store guidelines, and communications with third-party app developers[,]" (D.E. No. 37-2 at ¶ 2), represents that:

> Apple's App Store for the United States is managed at Apple's headquarters in Cupertino, Santa Clara County, California. As a result, the primary decision-making regarding the review of apps for the United States and related processes, the development of relevant policies, and marketing for the App Store occur in Cupertino, California.

(*Id.* ¶ 4). With regard to the sales-related aspects of Plaintiffs' claims, Apple's "Senior Director, Business Operations", represents that the Apple Pay business is likewise managed in Cupertino and that, as a result, "the primary decision-making regarding the Apple Pay payment processing business and development of relevant policies occurs" there. (D.E. No. 37-3 ¶¶ 2, 5). Those Apple representatives further indicated that none of its relevant decision-makers or records are located in

New Jersey.  (D.E. No. 37-2 ¶ 5 & D.E. No. 37-3 ¶ 7).

Plaintiffs do not challenge Apple's representations, and address the critical third *Jumara* factor only in passing:  "Finally, the Apple Defendants' bald assertion that 'a substantial part of the events that gave rise to Plaintiffs' claims against Apple occurred in the Northern District of California,' is simply not true.  As Plaintiffs have alleged, the misconduct of all the Defendants (Apple and Google) has occurred throughout the country."  (Apple Opp. Br. at 6).  Plaintiffs support that statement with a citation to Paragraphs 2 through 5 of their Complaint, which discuss the Sweepstakes Casino apps, generally, and allege that such apps are available on Apple's platform.  (Compl. ¶¶ 2–5).  Plaintiffs do not, however, counter Apple's argument that the allegedly wrongful acts (e.g., approval and policing of the Sweepstakes Casino apps, policies regarding payments) underlying their claims took place in California.  Therefore, the only evidence in the motion record points to the Northern District of California being the locus of Plaintiffs' claims.  Indeed, this case's only connection to New Jersey appears to be that Plaintiff Julian Bargo resides here.  This Court has previously found, however, that "the location of the alleged injury is not considered when determining the 'center of gravity' or where the claim arose in matters where no physical injury has occurred." *Santomenno*, 2012 WL 1113615, at *5.  The third *Jumara* factor thus weighs in favor of transfer.

Turning to the first private interest factor, Plaintiffs have elected to litigate in New Jersey, the home fora of Plaintiff Bargo.  (Compl. ¶ 12).  While this factor therefore weighs in favor of transfer, that weight is slight, because (i) Plaintiffs' claims against Apple are centered in the Northern District of California; *Kremer v. Lysich*, 2019 WL 3423434, at *4; and (ii) Plaintiffs bring their claims on behalf of a putative nationwide class of individuals (as well as on behalf of New Jersey and New York-specific subclasses). *See, e.g.*, *Job Haines Home for the Aged*, 936 F.

Supp. at 228.

The second private interest factor, which examines Apple's forum preference, weighs in favor of transfer. The Court finds that this weight is somewhat increased here, given that Apple seeks transfer to Northern District of California, where the "central facts" underlying Plaintiffs' claims arose. *Humana Inc.*, 2026 WL 96942, at *9.

### b.      The Parties' Convenience

When examining the fourth private interest factor, which examines the convenience of the parties themselves, the Court evaluates "their relative physical and financial condition." *Jumara*, 55 F.3d at 879. While the parties do not address this factor in their briefing, (*see generally* Apple Mov. Br., Apple Opp. Br. & Apple Reply Br.), the Court will assume that Apple has more financial means than the individual plaintiffs. Nothing in the record suggests, however, that Plaintiffs' financial condition would play any role in this putative class action. This factor, therefore, weighs against transfer, if only slightly.

### c.      The Convenience of Witnesses

The fifth private interest factor requires the Court to consider the convenience of potential witnesses. The Third Circuit has stated, however, that witnesses' convenience should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Here, nothing in the record suggests that potential witnesses would be completely unavailable to testify in either the District of New Jersey or the Northern District of California. (*see generally* Apple Mov. Br., Apple Opp. Br. & Apple Reply Br.); *see also Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 2:13-05805, 2014 WL 1555133, at 82 (D.N.J. Apr. 14, 2014), aff'd, No.13-5805, 2014 WL 3748214 (D.N.J. July 29, 2014) (finding the witnesses' convenience neutral because "neither party was able to offer evidence suggesting that

11

any witness would be unavailable for trial in either forum as opposed to merely being inconvenienced by the distance"). This factor is therefore neutral to the Court's analysis.

### d.    The Availability of Books and Records

The sixth and final *Jumara* private interest factor involves consideration of the "location of books and records." As with the previous factor, however, this one only carries weight if the documents could not be made available in one of the fora. *Jumara*, 55 F.3d at 879. Neither party suggests that this might be the case, (*see generally* Apple Mov. Br., Apple Opp. Br. & Apple Reply Br.), so this factor is also neutral to the Court's analysis.

### e.    Balancing the Private Interests

The Court finds that, on balance, the private interest factors weigh in favor of transferring this action to the Northern District of California, the center of gravity for this dispute. Plaintiffs' choice of forum for this putative class action is entitled to little deference and is, at best, negated by Apple's own forum preference. Although most of the remaining factors are neutral (though the "convenience of the parties" factor weighs slightly against transfer) the conduct underlying Plaintiffs' claims clearly points to the Northern District of California—not New Jersey. *See Frato v. Swing Staging, Inc.*, No. 10-5198, 2011 WL 3625064, at *6 (D.N.J. Aug. 17, 2011).

### iii.    Public Interest Factors

The Court must next consider the relevant public interest factors, which include (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty in the two fora from court congestion; (iv) the local interest in deciding controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879–80 (citations omitted). The Court will evaluate each in turn.

### a. Enforceability of a Judgment

The Court finds that the first public interest factor is neutral, as Plaintiffs would be able to register a judgment obtained in either forum in the other jurisdiction, pursuant to 28 U.S.C. § 1963. That statute provides, in pertinent part, that "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."

### b. Practical Considerations for Trial

Turning to the second public interest factor, the Court notes that "[p]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro*, 2012 WL 4464026, at *7. For the reasons discussed above as to the private interest factors, the Court finds that the locations of the parties, witnesses, books, and records are largely neutral to the analysis. However, practical considerations tip slightly in favor of transfer because Apple's choice of forum "bear[s] the most substantial connection to the events surrounding this case, [and] the District of New Jersey has invested few of its resources to this action," which remains in its infancy. *See Frato*, 2011 WL 3625064, at *7. Indeed, there have been no court conferences in this case, and there have been no judicial decisions issued in this matter. Furthermore, as it relates to this Court's congestion, discussed below, expediency favors transfer.

### c. Relative Fora Congestion

The third public interest factor, which requires the Court to examine "the relative administrative difficulty in the two fora from court congestion[,]" *Jumara*, 55 F.3d at 879, weighs in favor of transfer. According to the most current available data, the District of New Jersey had 93,986 pending cases as of December 31, 2025, whereas the Northern District of California had 16,345. United States Courts, *Federal Court Management Statistics, December 2025, U.S. District*

13

*Courts—Combined Civil and Criminal*, https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (last accessed June 29, 2026). The same data indicates that New Jersey has a significantly higher caseload per-judge, and a median time "from filing to trial" in civil cases of 56.9 months, compared to an average of 38.9 in the Northern District of California. *Id.*

Plaintiffs suggest that, because the JPML has rejected Defendants' motion to transfer this case into an existing MDL in the Northern District of California, the "administrative difficulty" factor disfavors transfer. (Apple Opp. Br. at 8). That argument is a red herring. The JPML found that it would be inappropriate to add this matter to the pending MDL, as it involved unique allegations (i.e., concerning the issuance of "virtual coins that can be redeemed for prizes with cash value") and would, therefore, involve "a significant and unwarranted expansion of the MDLs." (D.E. No. 34 at 2). The JPML did *not* evaluate a potential transfer to the Northern District of California pursuant to 28 U.S.C. § 1404. (*See generally id.*). For the same reason, the Court gives little weight to Apple's contention that the Northern District of California's experience in the related MDL would make a meaningful difference in promoting judicial efficiency. (Apple Reply Br. at 9). To the extent that district has some general familiarity with casino apps and Defendants' respective platforms, that experience would likely provide only a modest benefit considering the unique facts and claims at issue in this case.

### d. Local Interest in Deciding Controversies at Home

"The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose." *LG Elecs., Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001). This is so "because local judges and juries are preferred arbiters of events in their jurisdiction and community." *Id.*

For the reasons discussed above with respect to the California-based conduct underlying Plaintiffs' claims against Apple, the Court finds that California has a stronger local interest in adjudicating this action. *See Franklin*, 2014 WL 1555133, at *8; *Metro*, 2012 WL 4464026, at *8 ("New York has a compelling interest in adjudicating this controversy and regulating . . . the activities of corporate officers working for corporations which conduct business in that state."); *HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, No. 07-4390, 2009 WL 2589108, at *4 (D.N.J. Aug. 21, 2009) ("A state has a compelling interest in regulating its businesses or in litigating matters that arise from action occurring within its jurisdiction.").

The Court notes that, in connection with the "local interest" point, Plaintiffs argue that transfer would ignore the interests of the New Jersey Subclass and Plaintiff Bargo (a New Jersey resident) in having this litigation resolved in New Jersey. (Apple Opp. Br. at 8). That concern is not a "public" interest, however. The Court has already addressed Plaintiffs' forum preference herein in connection with the first "private" interest factor.

### e. Public Policies of the Fora

The Court next considers whether transfer would further the relevant public policies of the potential fora. *Jumara*, 55 F.3d at 879–80. The parties have identified three potential policies for the Court's evaluation. First, noting that this action arose in California, Apple argues that courts have recognized that New Jersey policy favors the conservation of judicial resources, such that the system (and especially jurors) are not burdened by litigation "'concerning decisions and/or conduct which occurred almost exclusively outside the State.'" (Appl Mov. Br. at 22 (quoting *In re Exxon Mobil Corp. Derivative Litig.*, No. 2:19-16380, 2020 WL 5525537, at *4 (D.N.J. Sept. 15, 2020)). Considering, however, that Plaintiffs seek to represent a subclass of New Jersey residents allegedly harmed by Defendants' activities, and assert claims under New Jersey statutory law, the Court

15

finds that the case is not so untethered to New Jersey that subjecting its citizens to jury service would run afoul of public policy.

Second, Plaintiff argues that "New Jersey has adopted a comprehensive gambling regulatory scheme directly relevant to the misconduct here", (Apple Opp. Br. at 9), and contends that transferring this matter to California would "encourage further disregard for the State's casino gaming regulations and will allow these Defendants to evade accountability under the gaming recovery statute with little more than clever litigation tactics." (*Id.*). This point is intertwined with Plaintiffs' other policy argument: that because the judge presiding over the related MDL in the Northern District of California recently rejected similar claims under state gambling recovery statutes, a transfer "would thus guarantee that the New Jersey Subclass loses any chance of recovery under N.J.S.A. § 2A:40-6" and undermine New Jersey's interest in regulating "its gaming industry and prohibit[ing] unlawful gambling." (*Id.* at 10). Essentially, Plaintiffs suggest that because the Northern District of California is likely to rule against them on Count One of the Complaint, the Court should deny transfer to protect New Jersey's policy interests. That argument presumes that New Jersey courts have interpreted N.J.S.A. § 2A:40-6 differently than the Northern District of California. Plaintiffs have not cited anything suggesting that to be the case.

Finally, Plaintiff argues that New Jersey's gambling recovery statute "serves as a *qui tam* statute in which recovery of gambling losses are shared with the State[,]" and that "[t]ransfer to California would undermine New Jersey's sovereign interest in obtaining relief from these Defendants for gambling losses incurred by its residents because California does not have a comparable recovery statute." Plaintiffs do not explain why the differences between California and New Jersey law matters. Transfer would not transform Plaintiffs' claims under New Jersey statutory law into claims under California common law. Any causes of action would remain the

16

same post-transfer.

As the parties have not identified any compelling public policies linked to either forum, the Court finds this factor to be neutral to its analysis.

### f.    Familiarity With Applicable State Law

The final public interest factor requires the Court to consider the familiarity of the trial judge with the applicable state law. *Jumara*, 55 F.3d at 879–80. Here, Plaintiffs have asserted claims arising under New Jersey, New York, and federal law. (*See generally* Compl.). As an initial matter, this Court is confident that any district judge presiding over this case would ably and correctly interpret and apply the relevant law, regardless of its source. Moreover, it bears noting that the parties' briefing indicates that the Northern District of California has already interpreted one of the New Jersey statutes at issue in this case. (Apple Opp. Br. at 10). The Court will nevertheless assume that a New Jersey-based court would be better suited to apply New Jersey law. This factor therefore weighs somewhat against transfer.

### g.    Balancing the Public Interests

The Court finds that the public interest factors tip slightly in favor of transfer. Two factors (enforceability of a judgment, public policy interests) are neutral, three support transfer to some extent (practical considerations, local interest, relative congestion), and the last (familiarity with relevant state law), favors keeping the case in New Jersey.

### iv.    Transfer is Appropriate Pursuant to 28 U.S.C. § 1404(a)

Having carefully considered and weighed the relevant private and public interest factors, the Court finds that it would be appropriate to transfer this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The Court will, therefore, **GRANT** Apple's motion.

17

**B.     Google's Motion to Transfer**

**i.     Plaintiff Rebecca Pratt Entered Into a Valid Forum Selection Clause**

Of the three named Plaintiffs, only Plaintiff Rebecca Pratt alleges that she accessed a Sweepstakes Casino app using Google's platform.  (Compl. ¶ 88).  Specifically, Plaintiff Pratt:

> downloaded the Chumba Casino app to her Android phone from GOOGLE's Play Store. Plaintiff purchased Gold Coins from Chumba Casino using Google Pay (owned and operated by Defendant GOOGLE PAYMENT CORP.) which she then wagered on her Android-based phone for the chance to earn Sweeps Coins, which were represented to her and others as redeemable for value.

(*Id.*).  The motion record reflects that "before a user can download any application via Google Play (whether paid or free), the user will have necessarily agreed to the Play Term.  It is impossible to download an application without having indicated agreement to the Play Terms."  (D.E. No. 38-2 ("Mills Decl.") ¶ 6).  Similarly, "when a user first creates a Google Pay account, which is when they typically add a payment method such as a credit card to pay using Google Pay, the user must indicate that she agrees to be bound by the Pay Terms."  (*Id.* ¶ 7).  Thus, "the user must have already agreed to the Pay Terms prior to making a purchase."  (*Id.*).  A Google representative stated, under penalty of perjury, that the aforementioned process "was in place between June 2024 and August 2024 when Ms. Pratt alleges she downloaded and made purchases in the Chumba Casino app, meaning it would have been impossible for Ms. Pratt to take these actions without agreeing to the Google Terms."  (*Id.* ¶ 9).

Both the "Play Terms" and the "Pay Terms" in place during the relevant period specified the use of Google Play/Google Pay was subject to the "Google Terms of Service" (the "Google TOS"), which were accessible via an embedded hyperlink.  (*Id.* ¶¶ 10—13).  The Google TOS in effect during the relevant period, (*id.* ¶ 14), featured a section labeled "Settling disputes, governing law, and courts", which provided, in relevant part:

> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

(D.E. No. 38-2 at 51 (ECF Pagination)).

Plaintiff Pratt does not take issue with Google's representations regarding the presentation (i.e., as a condition of use for the Google Play and Google Pay platforms, respectively) or content of the Play Terms, Pay Terms, or Google TOS. (*See generally* Google Opp. Br.). While she does not expressly recall seeing a forum selection clause, she makes no other representations concerning these agreements (e.g., their content, whether she rejected them, etc.). (*Id.*). Rather, Plaintiff argues that any forum selection clause included in those agreements is unenforceable, as it is overreaching, unconscionable and void under both New Jersey statutory law and public policy. (Google Opp. Br. at 5–12). Taking Plaintiffs' allegations in the Complaint (i.e., that Plaintiff Pratt utilized both the Google Play Store and the Google Pay services), together with the parties' respective representations in the motion record (i.e., that it would have been impossible for her to do so without first accepting the aforementioned terms and conditions / Plaintiff herself does not appear to recall whether she did so), permits only one conclusion: Plaintiff accepted Google's proposed terms and conditions before taking the actions alleged in the Complaint. Moreover, those terms and conditions contained a forum selection clause requiring that disputes arising out of Plaintiff's use of the Google Play and Google Pay services "be resolved exclusively in the federal or state courts of Santa Clara County, California, USA." (D.E. No. 38-2 at 51 (ECF Pagination)). Thus, the Court must determine whether that forum selection clause is valid and enforceable.

"'[F]orum-selection clauses are presumptively valid' in the Third Circuit." *Peck v. Jayco, Inc.*, 665 F. Supp. 3d 607, 613 (D.N.J. 2023) (quoting *Cadapult Graphic Sys., Inc. v. Tektronix,*

*Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000)).  "A party may challenge a forum-selection clause's presumptive validity by 'making a strong showing that the clause is unreasonable.'"  *Id.* (citing *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 564) (citation modified).  To show unreasonableness, the party resisting a forum selection clause must establish:

> (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

(*Id.*).  Plaintiffs have not met this burden.  The Court will consider their various arguments in turn.

First, Plaintiffs contend that "the forum selection clause at issue is rendered unenforceable by the plan language of New Jersey's gambling recovery statute, specifically N.J.S.A. § 2A:40-3." (Google Opp. Br. at 5).  Plaintiffs also contend that enforcement of the forum selection clause would contravene[] New Jersey's strong public policy interest in regulating its legal gaming industry and prohibiting illicit gambling—the very conduct at the heart of this lawsuit." (*Id.* at 10; *see also id.* at 10–12).  Here, however, the only representative plaintiff who has asserted claims against Google is Plaintiff Pratt, a New York resident.  Plaintiffs do not indicate how she might have standing to bring claims under New Jersey's gambling recovery statute, or any other New Jersey law.  Thus, Plaintiffs have not currently asserted *any* New Jersey-based claims against Google.  *See, e.g.*, *Gelis v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-07386, 2018 WL 6804506, at *11 (D.N.J. Oct. 30, 2018) ("Without a class representative, the putative class cannot be certified and its claims cannot survive.") (quoting *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997)).  Similarly, Plaintiffs have not established how enforcing a forum selection clause against a New York resident (and involving claims wholly untethered to New Jersey) might implicate New Jersey's public policy.  *See, e.g.*, *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 566 (D.N.J. 2000) (rejecting public policy

20

arguments against enforcing a forum selection clause, despite the plaintiff's status as a New Jersey resident, where the relevant facts happened outside of the state).  The Court, therefore, rejects both arguments.

Second, Plaintiffs argue that the forum selection clause is "unconscionable in that it constitutes a contract of adhesion between parties of vastly disparate bargaining power while providing no meaningful opportunity for users of Google's Android operating system (and its features) to decline."  (Google Opp. Br. at 5).  As this Court has previously recognized, however, "'[f]orum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause.'"  *OKLegal.com v. Meta Platforms, Inc.*, No. 25-2346, 2026 WL 850812, at *4 (D.N.J. Mar. 27, 2026) (quoting *Heartland Payment Sys., Inc. v. Steves*, No. 15-3544, 2015 WL 7737344, at *3 (D.N.J. Dec. 1, 2015)).  Indeed, none of the cases Plaintiffs cite involved a situation where, as here, a plaintiff expressly indicated his or her assent to be bound by certain terms.[1]  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) ("where  a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) ("We conclude that . . . where consumers are urged to download free software at the immediate click of a button, a reference to the existence of license terms on a submerged screen is not sufficient to

---

[1]    Plaintiffs' counsel argues that the Google Pay terms "merely allude to the general "Google Terms" without ever asking the user to manifest assent.  (Google Opp. Br. at 6).  The record reflects, however, that "when a user first creates a Google Pay account . . . the user must indicate that she agrees to be bound by the Pay Terms."  (Mills Decl. ¶ 7).  Moreover, "the user must have already agreed to the Pay Terms prior to making a purchase."  (*Id.*).

place consumers on inquiry or constructive notice of those terms."); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (declining to enforce arbitration and forum selection provisions in the context of a website-based purchase, where the customer would not encounter those provisions unless she happened to scroll to a part of the website unnecessary to the transaction); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 792–93 (N.D. Ill. 2011) (declining to enforce terms and conditions in the context of a website-based purchase where users would not see those terms unless they happened to click a link labeled "Customer Service" and then either scrolled "down a lengthy page containing unrelated information to find the Conditions of Use" or found a "Conditions of Use" link "sandwiched" between two others); *Black v. Kerzner Int'l Holdings, Ltd.*, No. 12-60301, 2012 U.S. Dist. LEXIS 191666, at **6-7 (S.D. Fla. Oct. 17, 2012) (declining to enforce a forum selection clause communicated by email where the plaintiff's only means of rejection–cancelling a planned trip– would have resulted in financial penalties).  Rather, those cases—all of which come from outside the Third Circuit—concern whether a user has received sufficient notice of terms and conditions in a "browsewrap" context.[2]  None provides the Court with any basis to invalidate the forum selection clause at issue here.

Finally, Plaintiffs argue, in general and without citation, that the forum selection clause is invalidly overbroad, "comprehensively sucking in any and all claims that bear *any* conceivable relation to [Google's] services."  (Google Opp. Br. at 5).  Plaintiffs' failure to provide any case law invalidating a forum selection clause in similar circumstances is significant, considering the

---

[2]    "In browsewrap agreements, a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen." *James v. Glob. TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017).  The idea is that a user assents to those terms simply by using the website.  *Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *5 (D.N.J. Dec. 29, 2022).  "Unlike online agreements where users must click on an acceptance after being presented with terms and conditions (known as 'clickwrap' agreements), browsewrap agreements do not require users to expressly manifest assent." *James*, 852 F.3d at 267.

presumptive validity of such clauses in the Third Circuit, *Peck*, 665 F. Supp. 3d at 613, coupled with the fact that the activities underlying Plaintiffs' claims—Google's provision of certain apps and payment services for those apps—(Compl. ¶ 11), appear to be primary features of the Google Play and Google Pay services, respectively.  (*Id.* ¶¶ 17–18).

Based on the foregoing, the Court finds that Plaintiffs have not made a "'strong showing'" that the forum selection clause at issue here is unreasonable.  *Peck*, 665 F. Supp. 3d at 613 (quoting *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 564).[3]  In turn, the Court finds that the clause is valid and enforceable against Plaintiff Pratt.

### C.    Transfer is Appropriate Pursuant to 28 U.S.C. § 1404(a)

Having found that Google and Plaintiff Pratt entered into an agreement with a valid forum selection clause, the Court next considers whether transfer is appropriate under 28 U.S.C. § 1404(a).  The Court concludes that transfer is warranted under *Atlantic Marine* and its progeny.  As previously discussed, when a valid forum selection clause exists, a district court must treat the private interest factors as weighing in favor of the preselected forum and proceed to analyze only the public interest factors.  *In re Howmedica Osteonics Corp.*, 867 F.3d at 402.  Moreover, as noted herein, the Court must transfer this action in accordance with the parties' forum selection clause unless Plaintiffs establish that those "public interest factors 'overwhelmingly disfavor a transfer.'"  *Beaumont*, 615 F. Supp. 3d at 260 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 66)).  Plaintiffs have not done so.

Here, Plaintiffs' arguments concerning the relevant "public interest factors" are essentially identical to those they made in connection with Apple's motion to transfer.  (*Compare* Apple Opp. Br. at 7–12 *with* Google Opp. Br. at 12–16).  The Court addressed those points above, and found

---

[3]    Plaintiffs do not suggest that litigation in California would be "so seriously inconvenient as to be unreasonable."  *Peck*, 665 F. Supp. 3d at 613.

that, on balance, the public interest factors weigh somewhat in favor of transfer.  (*See infra* Section II(A)(iii)(g)).  The Court must, therefore, **GRANT** Google's motion to transfer.  *Beaumont*, 615 F. Supp. 3d at 260.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant both motions to transfer, and will thus transfer this matter, in its entirety, to the United States District Court for the Northern District of California.

An appropriate Order follows this Opinion.

*s/ Esther Salas*

**Esther Salas, U.S.D.J.**
Date:  June 29, 2026

Cc:    Hon. Leda D. Wettre, U.S.M.J.